*In re* FIRST NAT. BANK OF ST. ALBANS.

(*Circuit Court, D. Vermont.* December 24, 1891.)

1. NATIONAL BANKS—MARRIED WOMEN AS SHAREHOLDERS — LIABILITY FOR ASSESS-
   MENTS.
       Married women, who are permitted by the laws of the state in which they reside
   to become shareholders in national banks, are liable to assessments thereon under
   the national banking laws.
2. EXECUTION—VALIDITY—JOINT DEBTORS.
       Where a judgment is against a husband and wife jointly, the fact that execution
   is issued against the wife alone is an irregularity not within the reach of a writ
   of error, and, when no motion is made in the trial court to correct it, it must be
   considered as valid.
3. EXECUTION SALES—REDEMPTION OF LANDS—VOLUNTARY PAYMENT.
       Under Laws Vt. 1884, No. 139, § 10, permitting the debtor to redeem within six
   months lands sold on execution, by paying to the officer the amount for which they
   were sold, with interest, such a payment is voluntary, and constitutes a waiver of
   all defects in the proceedings.
4. SURVIVAL OF ACTIONS—DEATH PENDING APPEAL.
       A decree founded upon a tort will survive though the debtor die pending an ap-
   peal in which a *supersedeas* bond has been given.

In Equity.   In the matter of the receivership of the First National
Bank of St. Albans.   Heard on petition by the receiver for leave to ac-
cept a proposal to compromise, together with a petition to sell assets in
case the proposal is not approved.   Proposal disapproved.   For former
reports, see 35 Fed. Rep. 463; 39 Fed. Rep. 403; 40 Fed. Rep. 413;
41 Fed. Rep. 752; 43 Fed. Rep. 700.

*Edward A. Sowles, Henry C. Adams,* and *T. W. Moloney,* for petition.
*Albert A. Hall, H. Charles Royce, Geo. A. Ballard, Henry A. Burt, Jed
P. Ladd,* and *Willard Farrington,* opposed.

WHEELER, J.   This bank has long been in the hands of a receiver ap-
pointed by the comptroller of the currency.   The statute (section 5234)
provides that the receiver, "upon the order of a court of record of com-
petent jurisdiction, may sell or compound all bad or doubtful debts;
and, on a like order, may sell all the real and personal property of such as-
sociation, on such terms as the court shall direct."   This receivership now
has cash in treasury and bank about $22,500; real estate, which came from
mortgages formerly belonging to the estate of Hiram Bellows, through Ed-
ward A. Sowles, executor, worth about $6,500; redeemable leases from
the same source in the same way, worth about $4,500; a judgment of
this court against Margaret B. Sowles and Edward A. Sowles for about
$50,000, apparently satisfied to about $30,000, on which a writ of error
without *supersedeas* is now pending in the supreme court of the United
States; real estate sold on execution against her on this judgment to the
amount of about $10,000; a decree of this court against Oscar A. Burton
for about $15,000, on which an appeal is now pending in the supreme
court of the United States; and poor paper of one Marshall to the amount
of about $100,000, for which $2,700 is offered.   The claims amount to
about $290,000, besides one in favor of Margaret B. Sowles of about
$26,000, established by decree of this court since the payment of divi-

dends on the others. Margaret B. Sowles and Susan B. Sowles, with others, making claims upon the assets, offer, in compromise of the whole, to pay, in substance, a sum sufficient to make a further dividend of 7 per cent. to all creditors but Margaret B. Sowles (about $20,300) for all of these assets, without claim by her for further dividend. This proposal has been submitted by the receiver, under direction of the comptroller, to this court, under that statute, with a petition for leave to sell all the assets if the proposal is not approved. Both have been fully heard on full notice to all the creditors, and appearance and expression of wishes by nearly all. These expressions are not sufficiently unanimous to be controlling.

The question is, what, in view of all the circumstances, is best for the creditors. The cash on hand would pay the 7 per cent. dividend offered to all the creditors but Mrs. Sowles; the judgment against her yet remains to meet any dividend to her; and more than $2,000 would be left. The proposal, therefore, in reality, is that the receiver give up all the assets but the cash on hand, and pay upwards of $2,000 for a release of the claims to that. If the judgment against Mrs. Sowles should be reversed, and final judgment in that suit be rendered in her favor, the offset would fail, and she would be entitled to a dividend of about $6,500 from this or other money, to make her equal with the other creditors on past dividends. About $2,200 of this money came from her to redeem real estate sold on the execution against her, and about $2,200 more came from the bid on a farm sold on the same execution. The lien by attachment on all the real estate sold on execution is claimed to have been lost by lapse of time between the judgment and sale. The validity of that judgment, or of the claim against her for the assessment on her stock in the bank, on which the judgment is founded, and on which another may be had if this should be reversed for some technical error, is very material.

The principal question about this is whether married women are liable to such assessments. This court held that they were. *Witters* v. *Sowles*, 32 Fed. Rep. 130. After the verdict on which this judgment was rendered, and before the decision on the motion for a new trial, the supreme court of the United States held that they were, in equity, when by the law of the place they could become such shareholders. *Bundy* v. *Cocke*, 128 U. S. 185, 9 Sup. Ct. Rep. 242. They may become such shareholders in Vermont, and the motion for a new trial was overruled. *Witters* v. *Sowles*, 38 Fed. Rep. 700. Since then the supreme court has fully decided, in a case quite similar, that they are liable at law. *Keyser* v. *Hitz*, 133 U. S. 138, 10 Sup. Ct. Rep. 290. These decisions seem to settle the validity of the claim on which the judgment against her was founded, and to go far towards settling the validity of the judgment.

A suggestion is made that the suit was not ended as to Edward A. Sowles, the husband, and that the judgment against the wife was against her alone, and erroneous, but it is not well founded. The issue for the jury on the plea of both was whether she was a stockholder, and legally holden for the assessment. The verdict followed that issue, and was that she was. The judgment for the plaintiff on the verdict was on the plea

of both, and against both,—the one as much as the other. By some inadvertence, execution against her alone was taken out and levied. That was an irregularity, not within reach of the writ of error, and which might have have been corrected on motion in her behalf. As it was, and was left by all to stand, it had the judgment against her, although against him also, behind it; which would probably amply support it. If that judgment should be reversed, another in the same suit would quite likely be obtained, to which the lien by attachment would, by the laws of the state, adopted by the rules of this court under the laws of the United States, be carried, and be capable of being effected by new levy in due season and proper form. The statutes adopted, regulating sales of real estate, provide that "the debtor may redeem the premises so sold by paying to the officer the amount for which the same was sold, with interest thereon," at any time within six months. Laws Vt. 1884, No. 139, § 10. Such payment on the debtor's own debt would seem to be clearly a waiver of all defects in the proceedings, voluntary, and not recoverable back on account of them. *Sowles* v. *Soule*, 59 Vt. 131, 7 Atl. Rep. 715. The purchaser of the farm would, doubtless, if his title should fail from defects in the proceedings, about which no opinion is now intimated, have a right to his money back; but, if that should be paid back out of the money on hand, enough would be left to pay the 7 per cent. offered.

Claims of unpaid legatees under the wills of Hiram Bellows and Susan B. Bellows upon the funds of the bank, redeemable leases, and lands which came from mortgages belonging to the estate of Hiram Bellows, are set up as incumbrances, which the funds to pay the 7 per cent. to creditors would be relieved of, and those who would take the rest of the assets would have to provide against. The assets of those estates, on which these claims would arise, were, under the laws of the state, personal assets in the hands of Edward A. Sowles, executor of both wills. After they had been converted by him, a final decree of the probate court, on notice to all, settling his accounts, decreeing payment of the legacies by him, and leaving these assets in his hands, was made, was not appealed from by any, and became binding upon all. He mortgaged and conveyed them to the bank. Susan B. Bellows was residuary legatee under the will of Hiram Bellows, and Margaret B. Sowles under the will of Susan B. Bellows. Margaret B. Sowles, as such legatee, brought suit against the receiver for this same property, and failed to make good any claim to it. *Sowles* v. *Witters*, 39 Fed. Rep. 403. This decision was in accordance with those of the supreme court of the state upon the same decree of the probate court. *Bellows* v. *Sowles*, 57 Vt. 411; *Weeks* v. *Sowles*, 58 Vt. 696, 6 Atl. Rep. 603. The claims of the other legatees must be similar to hers in these respects, and may also have become unfavorably affected by the lapse of time beyond the period of the statute of limitations.

The decree against Burton is founded upon his assent as director to an unlawful loan of the money of the bank to Edward A. Sowles. That this liability might not survive if he should not live till a decision upon

it by the supreme court is suggested. But the liability is now fixed by a decree. The appeal does not vacate the decree. The operation of it is suspended by the *supersedeas* founded on the bond for payment of the decree if it is affirmed. *Hovey* v. *McDonald*, 109 U. S. 150, 3 Sup. Ct. Rep. 136. The liability on this bond would survive, and would be enforceable against the sureties as well, if the decree should be affirmed. He has offered $4,000 for this liability. The real estate sold on the execution against Mrs. Sowles may or may not be holden. Whether it is or not. the value of the assets appears to be much beyond the amount offered.

A fair compromise of really disputable claims, to end litigation, would doubtless be wise; but this review of the assets of the bank and of the claims made upon them leads to the conclusion that the acceptance of this proposal would not be any such fair compromise, but would be a surrender of the rights of the bank to a large and unjustifiable extent.

The petition for leave to accept the proposal is denied.