[S. F. No. 3507.  Department One.—April 10, 1906.]

FRANK FOWDEN, Special Administrator of Estate of Mark Fowden, Deceased, Respondent, v. PACIFIC COAST STEAMSHIP COMPANY et al., Appellants.

Action for Negligence — Statement — Death of Plaintiff after Judgment for Him—Common-Law Rule.—Though the common-law rule that a personal action dies with the person applies to an action for a personal injury caused by negligence of a defendant, pending suit, that rule not having been changed in this state, yet that rule is inapplicable where the death of the plaintiff occurs after a judgment in his favor which has not been vacated.

Id.—Suspension of Judgment.—The mere suspension of the judgment for the plaintiff pending proceeding on motion for a new trial by a defendant, which is denied, or pending an appeal from the judgment and order denying a new trial, does not annul the judgment or effect an abatement thereof if the judgment is not reversed.

Id.—Joint Verdict and Judgment—New Trial as to One Defendant— Judgment not Wholly Vacated.—The fact that the verdict and

judgment for negligence were jointly entered against two defendants, and that a new trial was granted as to one of them, cannot operate to vacate the verdict and judgment *in toto* as to both of them. Such rule is not the law of this state, under which verdict and judgment may be given for one of two defendants sued jointly, and against another, if the proof justify it; and if the joint verdict and judgment are erroneous as to one they may be vacated as to that one only and remain in full force as to the other.

Id.—Support of Verdict as to Negligence of Steamship Company— Breaking of Hawser Used for Docking—Burden of Proof— Question for Jury.—A verdict as to the negligence of a steamship company is sufficiently supported by the breaking of a hawser used for docking a vessel, to the injury of the plaintiff, which is *prima facie* proof of negligence, throwing the burden upon the carrier to show the absence of negligence and that it arose from circumstances not under its control. Whether such a showing was made was a question for the jury.

Id.—Contributory Negligence—Question for Jury—Support of Verdict.—Where the evidence was such as to warrant the jury in finding that the plaintiff was not guilty of contributory negligence in simply standing near a rail where he was injured by the broken hawser, if he was not warned of the possible danger, the question whether he was leaning over the rail with his head projected, and sustained this position despite warning to stand back, was for the jury. By their verdict for the plaintiff they answered that question in the negative; and their verdict must be sustained upon the credible evidence of the plaintiff notwithstanding the greater number of witnesses for the defendant to the contrary.

Id.—Province of Trial Court—Duty of Appellate Court—Substantial Conflict of Evidence.—It is the province of the trial court to grant a new trial when the verdict is against the preponderance of the evidence; but it is the duty of the appellate court to sustain the verdict where there is a substantial conflict of the evidence, no matter how much it may preponderate upon the other side.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Carroll Cook, Judge.

The facts are stated in the opinion of the court.

George W. Towle, Jr., for Appellants.

James G. Maguire, and James L. Gallagher, for Respondent.

ANGELLOTTI, J.—On May 15, 1898, Mark Fowden, while a passenger on defendant corporation's steamer, Santa

Rosa, bound from Port Angeles, Los Angeles County, to the city and county of San Francisco, and while such steamer was docking at Santa Barbara, was severely injured by reason of the parting of a thirteen-inch hawser used in said docking, which had been attached to a pile on the wharf, and which parted under the strain to which it was subjected, one end thereof recoiling and striking Fowden upon his face and head.   Fowden instituted this action for damages resulting from the injuries thus received, against both the steamship company and Ezekiel Alexander, the captain commanding said steamer at the time of the accident, alleging that the hawser was broken by reason of the excessive strain to which it was subjected through the negligence of defendants in operating the steamer, and also that said hawser was worn, weak, and defective, and wholly incapable of bearing the strain to which it was subjected in the work for which it was used, and that this defective condition was known to defendants.   The case was tried by a jury, and a verdict was rendered in favor of plaintiff against both defendants for six thousand dollars, upon which judgment was entered. Both defendants moved for a new trial upon various grounds, and the trial court granted the motion as to defendant Alexander, and denied it as to the steamship company.   The defendants appeal from so much of the order as denied the steamship company a new trial.

Subsequent to the entry of judgment and the order on motion for a new trial, the plaintiff died, and Frank Fowden, special administrator of his estate, has been substituted herein.

1. It is urged that plaintiff's action being based on negligence resulting in his personal injury, his death abates the action and vacates everything done therein.   Defendant thus invokes the application of the common-law rule, *actio personalis moritur cum persona,* and it may be conceded that the rule applies to such a cause of action as is stated in the complaint herein, and that no change in the common-law rule material to such a cause of action has been made by statute in this state.   (See *Harker* v. *Clark,* 57 Cal. 245.) It must, however, be held that the rule has no application under the circumstances of this case.   Here, judgment upon the cause of action alleged was given and entered in favor of

the plaintiff prior to his death, and this judgment has not been vacated.

The pending proceeding instituted by defendants after judgment for the purpose of obtaining a new trial is, as suggested by appellants, a new statutory proceeding, collateral to the original proceeding, and having no other effect thereon, in the absence of an order granting a new trial, than to stay proceedings on the judgment if a proper stay-bond be given, and to keep the action pending until the final disposition of the motion. In other words, the judgment entered is at most simply suspended pending the proceeding, and not vacated, and if the motion be finally denied, the judgment already entered will stand as and from the date on which it was given. Under our practice, proceedings by an unsuccessful party to obtain a new trial are analogous to proceedings on writ of error, or an appeal in the nature of a writ of error, and are, in effect, a new action brought to reverse a judgment in the lower court, and if for any reason they abate, the judgment sought to be reversed remains in force as if no such proceedings had ever been brought. The authorities are practically unanimous upon the proposition that although the cause of action is such that it would abate by the death of the plaintiff before judgment, the death of the plaintiff after judgment, and pending disposition of a writ of error or appeal in the nature of a writ of error, will not affect the judgment. As some of the cases say, the original wrong or claim is merged in the judgment, which has all the attributes of a judgment in actions *ex contractu.* After the giving of the judgment, the controversy is over the judgment, and not over the original wrong. The judgment is not annulled during the pendency of such controversy, but simply suspended. (*Kelly* v. *Kelly,* 137 Ind. 690, [37 N. E. 545]; *Carr* v. *Risher,* 119 N. Y. 117, [23 N. E. 296]; *Kimbrough* v. *Mitchell,* 38 Tenn. 539; *Akers* v. *Akers,* 84 Tenn. 7, [57 Am. Rep. 207]; *Knox* v. *Knox,* 12 N. H. 352; *Lewis* v. *McDaniel,* 82 Mo. 577; *In re First National Bank,* 49 Fed. 120; *Lewis* v. *St. Louis etc. R. R. Co.,* 59 Mo. 495, [21 Am. Rep. 385]; *Galveston City Ry.* v. *Nolan,* 53 Tex. 139; 5 Ency. of Plead. & Prac., 794; 1 Cyc. pp. 78 and 79.) Where the subsequent proceedings are in the nature of what has been called a "broad appeal," having the effect of abso-

lutely annulling the judgment and requiring a judgment *de novo* in the appellate or reviewing court, a different rule may logically be applied. Such must have been the reason for the decision in *Faith* v. *Carpenter,* 33 Ga. 79, where it was held that the death of the party pending appeal abated the action altogether. Of course, if the order denying a new trial be here reversed, the effect of such reversal would be to vacate the judgment, and the case would then stand in the same position as though no judgment had ever been given, in which event defendant might successfully contend that no further proceedings could be had. That, however, is not a question for determination here. The case of *Gerling* v. *Baltimore etc. R. R. Co.,* 151 U. S. 673, [14 Sup. Ct. 533], cited by defendants, is not in point. There the verdict and judgment were for defendant, and the plaintiff died during the pendency of the proceedings instituted by him to obtain a reversal and a new trial.

2. It is claimed that as the verdict was a joint verdict against both defendants, the granting of a new trial as to one vacated the verdict and the judgment entered thereon *in toto.* We see no force in this contention. The rule contended for by defendants in this respect is not the law in this state. Plaintiff had the right to join as defendants all whom he may have considered participants in the alleged act of negligence, and therefore liable as joint tort-feasors. But this did not make his right to recover the resulting damages from one so joined in any degree dependent upon his success as against the other. Under our code, verdict and judgment might be given in his favor against one defendant so sued, and in favor of the other, if the proofs justified it. (Code Civ. Proc., sec. 578.)

A verdict rendered against both is a finding that both participated in the negligent act, and are therefore jointly liable to the plaintiff therefor, but the verdict and judgment entered thereon are subject to review, and if on such review it be determined that the verdict and judgment are for any reason erroneous as to one, they may be vacated as to that one only, and remain in full force as to the other. This was definitely decided by this court in *Nichols* v. *Dunphy,* 58 Cal. 605. There, verdict and judgment in an action for damages for negligence had been given against two defendants jointly sued, and one only had appealed, and as to him the judgment

had been reversed. It was held that as to the other the judgment remained in full force, the court saying, "As to her, there was a valid judgment, in plaintiff's favor, unappealed from and undisturbed." And an order quashing an execution issued against said such other defendant on such judgment was reversed.

This case, which is in accord with the prevailing rule in the United States, has been approvingly cited many times by this court, and completely disposes of the theory that the verdict and judgment against two or more alleged tort-feasors are entire in the sense that if they are vacated as to one they must also necessarily fall as to the others. It is of course immaterial whether the vacating of the verdict as to one defendant be accomplished by a reversal of the judgment on an appeal or by the granting of a motion for a new trial. (See, also, *Dawson* v. *Schloss,* 93 Cal. 194, [29 Pac. 31] ; *Grundel* v. *Union Iron Works,* 127 Cal. 438, [78 Am. St. Rep. 75, 59 Pac. 826] ; *Hubbell* v. *Meiggs,* 50 N. Y. 480; *Martin* v. *Farrell,* 66 App. Div. 179, [72 N. Y. Supp. 934] ; and 16 Am. & Eng. Ency. of Law, 1st ed., p. 676.)

The case of *Rankin* v. *Central Pacific R. R. Co.,* 73 Cal. 93, [15 Pac. 57], does not assist defendants. The appeal there was by the plaintiff from a judgment in his favor against one of two defendants, and in favor of the other defendant, entered upon a verdict which was entirely silent as to such other defendant, and it was simply held that the judgment in favor of such defendant against plaintiff could not stand in the absence of a verdict to support it, and that a verdict which was silent as to a defendant was no verdict at all as to such defendant. Nor is the case of *Chetwood* v. *California National Bank,* 113 Cal. 414, [45 Pac. 704], in point. There the cause of action alleged against three defendants was their joint neglect to perform duties collectively undertaken as members of the executive committee of a bank, resulting in the loss to said bank of large sums of money, and there was therein no pretense of any claim of a several and separate liability upon the part of each defendant. They were negligent as a body, or not at all. A judgment was given against one defendant only, upon findings which failed to show any negligence on the part of the executive committee, or any member thereof, as such, but only showed that such defendant

was individually and separately negligent in the performance of his duties as president of the bank, and it was held that this was a different cause of action from that presented by the pleadings. The case was simply one of a material variance between pleadings and proof. In the case at bar a verdict and judgment as to one only of the defendants would as to such defendant, be entirely consistent with the allegations of the complaint, which states a complete and separate individual liability on account of the single act complained of, on the part of each defendant, and such a verdict, in the absence of objection by plaintiff, as in *Rankin* v. *Central Pacific R. R. Co.*, 73 Cal. 93, [15 Pac. 57], would stand as against such defendant.

Defendants apparently claim that where a plaintiff has elected to sue two joint tort-feasors jointly there can be no subsequent severance without the consent of the defendants, or one of them, as where one moves for a new trial or takes an appeal, and the other does not, as in the case of *Nichols* v. *Dunphy*, 58 Cal. 605. But manifestly this is not so, if the appellate court can, upon the appeal of both, affirm as to one and reverse as to the other, and as to this there can be no question under the authorities.

When we consider the nature of the liability of two or more persons jointly engaged in the commission of a tort, it is apparent that any such wrong-doer cannot at any stage of the proceedings insist that any or all of his associates in the act shall bear with him the burden of defending against the claim of the injured party or of compensating him for the injury. There is no right of contribution among them. They are all jointly and severally liable, as the injured party may elect. The injured party may sue all or any of them jointly, or each separately, or, having secured a joint judgment against all, enforce such judgment by execution against one only, the only limitation being that he can have but one satisfaction for the injury that he has received. Each of the joint tort-feasors being liable for all the damage, without regard to their different degrees of culpability, when his cause of action is satisfied as to one, it is satisfied as to all.

Clearly, the granting of a new trial as to one cannot give to the other any legal ground for complaint. That the lia-

bility of defendant Alexander has not been adjudged is entirely immaterial to the steamship company.

3. While a contrary finding would have been sustained, it cannot be held that there was not sufficient evidence to sustain the finding of the jury that the steamship company was guilty of negligence. We see no good reason why the general rule to the effect that the breaking or giving way of an instrumentality being used by and under the control of the carrier is *prima facie* proof of the negligence, throwing the burden upon the carrier to show the absence of negligence, is not applicable to a hawser used for the purpose of docking a vessel. Ordinarily, such a hawser, of suitable size, material, and construction, in proper condition and carefully used, will sustain the strain to which it is subjected, and thus serve the purpose for which it is used, and under ordinary conditions a parting thereof would reasonably indicate that it was defective or had been negligently subjected by those in charge of the steamer to an unnecessary strain. This affords the basis for the application of the rule. It is true that the conditions produced by high wind and heavy seas are sometimes such that the highest care will not be effectual to prevent such an unusual strain as will part the very best hawser that it is practicable to use, but these are not the ordinary conditions, and it devolves upon the carrier to show that the parting of the hawser was caused by circumstances over which it had no control and against which the highest degree of care would not avail. Whether such a showing was here made was a question for the jury. (See *McCurrie* v. *Southern Pacific Co.* 122 Cal. 558, [55 Pac. 324]; *Cody* v. *Market Street Ry. Co.,* (Cal.) [82 Pac. 666], and cases there cited.) We see nothing contrary to this view in *The Columbia,* [109 Fed. 660], 48 C. C. A. 596. While there was some evidence to the effect that the hawser was of the largest practicable size and of the best possible material and construction, it also appeared that the hawser had broken on the second trip on which it was used, under circumstances not disclosed by the testimony, within two or three feet of the second break, and had been spliced, and had been in use for the four or five months preceding the accident without any further or other test than that to which it had been subjected by its ordinary use. As suggested by respondent, there is no evidence

whatever of any test or inspection of the hawser by any one from the time it first parted to the time of the accident in question.

4. It is most earnestly contended that the evidence compels the conclusion that Fowden was guilty of negligence contributing to his injury. As already stated, at the time of the accident the steamer was being docked at the wharf at Santa Barbara. The line that parted was known as the spring-line, which extended from the main deck through a chock near the bow of the vessel to a pile on the wharf. Its use was to prevent the vessel going ahead, and it was two hundred and twenty-five or two hundred and thirty feet long. Fowden, a first-class passenger, was on the saloon deck, the deck above the main deck, and in a place, on the landside thereof, given over, under ordinary conditions, to the use of first-class passengers. This deck had a netting bulwark about three feet in height, topped by a rail, extending from which to the deck above, a distance of a little over four feet, were stanchions about seven feet apart, the space between said stanchions being open. There were seats about fourteen inches wide and twenty inches high running along the net bulwark. Fowden was near the seventh stanchion, and, according to his own testimony, standing upright there, with his hands behind him. The spring-line parted somewhere between the sixth and eighth or ninth stanchions, and one end thereof flew up and hit him on the lower part of the head with great force. The claim of defendants was that the hawser in its recoil did not reach the space within the rail at all, but that Fowden at this time was leaning over the rail with his head projected thereover, and that he maintained this position in disregard of the warnings of the servants of the company. The trial court instructed the jury, in effect, that if Fowden was standing with his head projected over the rail of the steamer, and was warned by the servants of defendants that his position was a dangerous one, and in disregard of such warning maintained such position to the time of the accident, and was there injured, his act in maintaining such position was contributory negligence, and their verdict must be for the defendants.

We are satisfied that the evidence was such as to warrant the jury in concluding that Fowden was not guilty of negli-

gence in simply standing near the rail, if he was not warned of the possible danger. The question, then, is as to whether he was leaning over the rail with his head projected thereover, and maintained this position, despite warning to stand back. The jury by their verdict have answered this question in the negative. Was there sufficient evidence to sustain their finding?

According to the record before us, the testimony of the many persons who claimed to be eye-witnesses was contrary to this conclusion of the jury. Several apparently disinterested passengers testified that Fowden's head was projected over the rail, that the passengers were warned by employees of defendant steamship company to stand back and told that there was danger, and some testified that Fowden nevertheless maintained his position, and several employees testified to the giving of the warning, some testifying that they personally warned Fowden himself, and that he declined to move. No person testified to the contrary except Fowden himself, but he was very positive in his testimony that his head was at no time projected over the rail, and that no warning was given to him, or, within his hearing, to the others to stand back. In the face of this positive testimony on the part of Fowden, can it be said that there was not a substantial conflict in the evidence? While the record produces in our minds the opinion that the verdict of the jury was against the great weight of evidence of the eye-witnesses, we are satisfied that this question must be answered in the negative.

Leaving out of view for the moment the evidence of defendants' witnesses above referred to, there was under the circumstances of this case nothing in this testimony of Fowden that was so inherently improbable as to compel the conclusion that it was unworthy of belief. It certainly cannot be held that his injuries were of such a nature that they could have been inflicted only while his head was projected over the rail. Nor can it be held that the end of the hawser could not have recoiled to a place within the rail. Although such a thing was not shown to have happened before in the personal experience of two of the defendants' witnesses, no reason is apparent why it might not so happen, and the evidence of defendants as to the custom of warning passengers back from the rail would indicate an anticipation of just such a contingency. The evi-

dence of two witnesses that the end of the line did not come aboard on this occasion, was not such as to legally compel a conclusion to that effect by the jury.

The situation, then, is that the evidence of Fowden upon these points can be said to be improbable only because a large number of witnesses testified to the contrary, but this does not reduce such evidence to "a mere semblance or pretense of evidence" insufficient to support a verdict. Taken in connection with the undisputed facts, it was not so inherently improbable as to be unworthy of belief, and to justify the court in ignoring it. As the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact, except perjury and treason (Code Civ. Proc., sec. 1844), such evidence is necessarily sufficient to create a substantial conflict, regardless of the number of witnesses who testify to the contrary. The mere number of witnesses on one side or the other is immaterial in this connection. The law requires the jury to be instructed by the court on all proper occasions that they are not bound to decide in conformity with the declarations of any number of witnesses, against a less number or against a presumption or other evidence satisfying their minds. (Code Civ. Proc., sec. 2061, subd. 2.)

Apparently recognizing this, learned counsel for defendants contends that Fowden was not a witness entitled to full credit within the meaning of section 1844 of the Code of Civil Procedure, by reason of the nature of the injuries he received and the manner in which he was contradicted by other witnesses. But if he was competent to testify as a witness at all, as to which there can be no question, the question as to the amount of credit to which his evidence was entitled was for the jury alone to determine. Under our system, the jury, or trial judge sitting in place of a jury, are the exclusive judges of the credibility of a witness. (Code Civ. Proc., sec. 1847, 2061, subd. 1.) His interest in the result of the case, his physical and mental conditions for some time immediately following the accident, the strong likelihood of his testimony being incorrect upon the point as to whether other persons were standing near him upon the deck at the time of the accident, and the contradictory evidence, were all to be taken into consideration by the jury in determining the amount of credibility to be given to his testimony, but the utlimate question as to cred-

ibility was exclusively for them. If they determined as a fact that his testimony was entitled to full credit, which they must here be held to have done, that finding is conclusive upon us.

The question in the case of *County of Sonoma* v. *Stofen,* 125 Cal. 32-37, [57 Pac. 681], relied on by defendants, was not the question here presented. There the trial judge had found against the story of a county treasurer who was alleged to have converted county funds to his own use, and who testified that he had been robbed. There was no direct evidence opposed to this, but the surrounding circumstances were such as to make the story very improbable, and the trial judge found against it. It was in affirming this judgment, that this court said ''that the evidence of the defendant so situated does not, as a matter of legal compulsion, command this full credit.'' There, as here, it was for the jury or trial judge to determine what credit should be given the evidence, and if the judgment had been the other way, doubtless it would have been affirmed on appeal. We find nothing in the other cases cited by the defendants that is in conflict with the views herein expressed. It may be admitted that in some cases testimony may, in the light of the undisputed facts, be inherently so improbable and impossible of belief as to in effect constitute no evidence at all, and that in other cases alleged testimony may consist of only one or two general statements made in such a way as to render it no more than a mere semblance or pretense of evidence. Such, however, is not the situation in the case at bar.

It being determined that there was a substantial conflict in the evidence upon the question of contributory negligence, it must be conceded that this court cannot disturb the finding of the jury thereon, and the approval thereof by the trial court, evidenced by its order denying a new trial. It is the firmly settled law of the state that this court will not disturb the ruling of the court below on a motion for a new trial upon the ground of insufficiency of evidence, if there be a substantial conflict in the evidence, even though this court may, upon the record, consider the verdict greatly against the weight of the evidence. It is needless to cite authorities to sustain this well-recognized proposition.

Where there is a substantial conflict in the evidence, however much the evidence may preponderate against the verdict, the sole remedy of the aggrieved party is his application to

the trial judge for a new trial. It is the duty of the trial judge, who has heard the evidence and had ample opportunity to judge as to the amount of credit to be given to the various witnesses, to grant a new trial when he is of the opinion that the verdict is clearly against the weight of evidence, notwithstanding that there is a substantial conflict therein. No such power exists in this court. It may be that trial courts are sometimes too reluctant to exercise their power of granting a new trial in a proper case, and too much inclined to acquiesce in verdicts which are clearly against the weight of evidence. (See *Green* v. *Soule,* 145 Cal. 96, 102, [78 Pac. 337].) This, however, cannot give the power to this court in a case where there is a substantial conflict in the evidence. The final responsibility must rest where it is placed by the well-settled law,—with the trial court.

5. There is no other point requiring discussion. The verdict cannot be held to be in violation of any instruction given by the court to the jury. There was no error as to defendant steamship company in the instructions given to the jury. Upon the facts shown by the record, we cannot say that the damages awarded were excessive.

We see no legal ground upon which the action of the court below in denying a new trial as to the steamship company can be disturbed.

The order appealed from is affirmed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.