VERLINDA, RESPONDENT, *v.* STONE & WEBSTER ENGIN-
EERING CORPORATION, APPELLANT.

(Nos. 2,987 and 3,018.)

(Submitted November 4, 1911.    Decided November 22, 1911.)

[119 Pac. 573.]

*Personal  Injuries — Master  and  Servant — Vice-principal —
Negligent System of Work—Insufficient Assistance—Fellow-
servants—Concurring Negligence—Joinder of Defendants—
Verdict Against One—Effect—Instructions—Ignoring Issues.*

Personal Injuries—Master and Servant—Instructions—Ignoring Issues.
   1.   An instruction, requested by the defendants in a personal injury action charging negligence in a number of particulars, in which liability was made to turn solely upon the question whether there had been negligence in one particular, thus ignoring the others alleged, was properly refused.

Same—Vice-principal.
   2.   Defendant company's superintendent, its codefendant to whom it had intrusted the direction of work connected with the construction of a power dam, and who had control of the men, with power to hire and discharge them, was a vice-principal.

Same—Liability of Master—Negligent System of Work.
   3.   Liability of a defendant employer for injuries to an employee may be predicated upon a negligent system or mode of work pursued, or upon a negligent method of using machinery or appliances which are entirely free from defects.

Same—Negligence—Insufficient Assistance.
   4.   Failure of the master to provide a sufficient number of servants to assist in performing work of a hazardous nature with reasonable safety constitutes negligence.

Same—Concurring Negligence of Fellow-servant—Defenses.

    5. The master is not relieved from liability for an injury to his servant because the negligence of a fellow-servant concurred with his own in bringing about the injury.

Same—Several Acts of Negligence—Proof of One Sufficient.

    6. To entitle plaintiff to recover, he was not under any obligation of proving all the acts of negligence alleged by him; proof of any one or more of them which approximately caused the injury was sufficient.

Same—Joint Tort-feasors—Verdict as to One—Effect.

    7. Where in an action brought jointly against defendant company and its vice-principal to recover damages for personal injuries, the jury found against the former but did not make any finding whatever with reference to the latter, a motion for judgment in favor of the company (asked for on the ground that its codefendant—through whom alone it could act—having thus impliedly been found faultless, the jury of necessity found it likewise without fault), was properly denied; since the legal effect of the omission of the jury may not be held an implied finding in favor of the vice-principal, but should be regarded as no finding upon the issues of negligence as to him.

Same—Joinder of Defendants—*Respondeat Superior*—Personal Liability.

    8. Plaintiff in a personal injury action may proceed against any one or all of defendants by whose concurrent negligence he suffered injury. A joinder of them all in the same action is not objectionable because of the fact that one is liable upon the principle of *respondeat superior*, and the others are chargeable personally; nor may plaintiff be non-suited because he has brought too many defendants into court.

Same—Joinder of Defendants—Verdict Against One—Effect.

    9. Where plaintiff in a personal injury action against his employer and the latter's superintendent elects to take judgment against the former alone, his course amounts to a dismissal of the action as to the latter.

  *Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

ACTION by Victor Verlinda against the Stone & Webster Engineering Corporation and others. From a judgment for plaintiff against defendant corporation, and from an order denying a new trial, it appeals. Affirmed.

*Mr. E. C. Day* submitted a brief in behalf of Appellant, and argued the cause orally.

The jury found by its verdict that the defendant Wallace was not guilty of negligence. Having so found, since the company had acted through him, if it acted at all, a verdict for Wallace required also a verdict for the company, and hence the court erred in refusing to enter up judgment in its favor. The verdict for the plaintiff and against the defendant Stone &

Webster Engineering Corporation being silent as to the defendant William Wallace, it was a verdict in his favor upon all issues in the case upon which he was entitled to have judgment entered dismissing the action as to him, and judgment was so entered. (*Doremus* v. *Root,* 23 Wash. 710, 54 L. R. A. 649, 63 Pac. 572; *Howard* v. *Johnson,* 91 Ga. 319, 18 S. E. 132; *Kinkler* v. *Junica,* 84 Tex. 120, 19 S. W. 359; *Railway Co.* v. *James,* 73 Tex. 12, 15 Am. St. Rep. 743, 10 S. W. 744; *Milling Co.* v. *Abernathey,* 8 Ind. App. 73, 35 N. E. 399.) The action against the Stone & Webster Engineering Corporation and William Wallace was a joint action based upon the acts of the defendant William Wallace. The jury having found for him, a verdict against the Stone & Webster Engineering Corporation is self-contradictory and will not support a judgment for the plaintiff. (*Doremus* v. *Root, supra; Stevic* v. *Northern Pac. Ry. Co.,* 39 Wash. 501, 81 Pac. 999; *Morris* v. *Northern Imp. Co.,* 53 Wash. 451, 102 Pac. 402; *McGinnis* v. *Chicago R. I. & Pac.,* 200 Mo. 347, 118 Am. St. Rep. 661, 98 S. W. 590, 9 L. R. A., n. s., 880, 9 Ann. Cas. 656; *Hayes* v. *Chicago Tel. Co.,* 218 Ill. 414, 75 N. E. 1003, 2 L. R. A., n. s., 764.) That the action against the master and servant is a joint action, and, unless parties are liable as joint tort-feasors, they cannot be sued in the same action, is well settled by the decisions of this court. (*Cummings* v. *Reins Copper Co.,* 40 Mont. 599, 107 Pac. 904; *Golden* v. *Northern Pac. Ry. Co.,* 39 Mont. 435, 104 Pac. 549; *Knuckey* v. *Butte Electric Ry. Co.,* 41 Mont. 314, 109 Pac. 979.) In the case of *Forsell* v. *Pittsburg & Mont. Copper Co.,* 38 Mont. 403, 100 Pac. 218, which was an action based on the concurrent negligence of the master and a fellow-servant and in which a motion for non-suit had been granted, as to the fellow-servant, the court, in reversing a judgment for the plaintiff against the master, says: "The court having found that Medlin [the servant] was not negligent, then, no matter what negligence is shown on the part of the company, the plaintiff could not recover against the company under the allegations of the complaint."

*Messrs. Purcell & Horsky,* and *H. G. & S. H. McIntire,* for Respondent, submitted a brief; *Mr. H. G. McIntire* argued the cause orally.

We contend that the verdict is good and sufficient as to the defendant corporation, but is no verdict as to the defendant William Wallace, and as defendant Samuel Turchin had filed no answer, was in default, and consequently had confessed the allegations of the complaint as to himself, he is not in anywise a party to said verdict or to the further proceedings in the case. All the authorities hold that the verdict in this case is a good and sufficient verdict against the defendant corporation, upon which judgment must be rendered; they differ somewhat, however, as to whether the failure to name or refer to the other defendant is no verdict or one in his favor. Both on reason and authority we submit it is no verdict for or against Wallace. (See *Rankin* v. *C. P. R. Co.,* 73 Cal. 93, 15 Pac. 57; *Fowden* v. *Pacific C. S. S. Co.,* 149 Cal. 157, 86 Pac. 178; *French* v. *Cresswell,* 13 Or. 418, 11 Pac. 63; *People* v. *Sepulveda,* 59 Cal. 342; *Alexandria M. & E. Co.* v. *Painter,* 1 Ind. App. 587, 28 N. E. 113.) As, under these authorities, there was what amounts to a mistrial as to the defendant Wallace, we had the right to dismiss the action as to him and the entry of the judgment herein is such a dismissal. This was directly decided in *Rankin* v. *C. P. R. Co., supra.* See, also, *Postal Tel. Co.* v. *Likes,* 225 Ill. 249, 80 N. E. 136.) An action may be dismissed by the plaintiff at any time before trial. (Revised Codes, sec. 6714; *State* v. *Court,* 32 Mont. 37, 79 Pac. 546; *Casey* v. *Jordan,* 68 Cal. 246, 9 Pac. 92, 305; *Goldtree* v. *Spreckels,* 135 Cal. 666, 67 Pac. 1091; *Duffy* v. *Ref. Co.,* 141 Fed. 206.) The plaintiff in an action of tort may enter a discontinuance, after verdict, as to a part of the defendants, without discharging the rest. (*Thomas* v. *Hoffman,* 22 Mich. 45; *Allen* v. *Craig,* 13 N. J. L. 294; *Dyett* v. *Hyman,* 129 N. Y. 351, 26 Am. St. Rep. 533, 29 N. E. 261; *Arundel* v. *Springer,* 71 Pa. 398.) The court, in an action against joint tort-feasors may, with the consent of the plaintiff, dismiss the action as to one defendant, and the codefendant

cannot complain.    (*Grott* v. *Railway Co.*, 34 Utah, 152, 96 Pac. 1019; *Rowe* v. *Simmons,* 113 Cal. 688, 45 Pac. 983.)

Dismissal is not too late after verdict and judgment.    (*Railway Co.* v. *Sheftall,* 133 Fed. 722, 66 C. C. A. 552; *Nashville Ry. & L. Co.* v. *Trawick,* 118 Tenn. 273, 121 Am. St. Rep. 996, 99 S. W. 695, 10 L. R. A, n. s., 191, 12 Ann. Cas. 532.)    The plaintiff may dismiss as to some joint tort-feasors at any stage of the proceedings without affecting the merits as to the others. (*Berkson* v. *Kansas City etc. Co.,* 144 Mo. 211, 45 S. W. 1119; *Melson* v. *Thornton,* 113 Ga. 99, 38 S. E. 342.)

But even if the verdict in question were one in favor of defendant Wallace, this does not affect the plaintiff's right to a judgment on the verdict against the defendant corporation.    The case of *Illinois C. R. Co.* v. *Murphy,* 123 Ky. 787, 97 S. W. 729, 11 L. R. A., n. s., 352, is directly in point although not so strong in its facts as the present case, in which are alleged not only acts of negligence on the part of the servant, but also positive negligent acts of the defendant corporation.    (*Texas & P. R. Co.* v. *Huber* (Tex. Civ. App.), 95 S. W. 568; *Fowden* v. *Pacific C. S. S. Co., supra.*)    In all the following cases, judgment was held proper against the one defendant even though the other defendant was exonerated by the jury: *Lawson* v. *Robinson,* 68 Kan. 737, 75 Pac. 1012; *Taylor* v. *Houston etc. R. Co.* (Tex. Civ. App.), 80 S. W. 260; 4 Current Law, 1808; *James* v. *Evans,* 149 Fed. 136, 80 C. C. A. 240; *Hewett* v. *Woman's Hospital Aid Assn.,* 73 N. H. 556, 64 Atl. 190, 7 L. R. A., n. s., 496.    Judgment against two defendants in an action for personal injuries, affirmed as to one, reversed and new trial granted as to other defendant.    (*Anderson* v. *N. P. R. Co.,* 34 Mont. 181, 204, 85 Pac. 884; see, also, *Ramsdell* v. *Clark,* 20 Mont. 103, 49 Pac. 591.)    Jury may find for one and against the other, or may assess punitive damages against one and not the other.    (*Louisville & N. R. Co.* v. *Roth,* 130 Ky. 759, 114 S. W. 264; *Schmidt* v. *Chicago & R. Co.,* 239 Ill. 494, 88 N. E. 277; *Buffalo Grain Co.* v. *Sowerby,* 195 N. Y. 355, 88 N. E. 569; *Pittsburg & R. Co* v. *Darlington,* 129 Ky. 266, 111 S. W. 360.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action by plaintiff to recover damages for injuries sustained by him through the negligence of the defendant Stone & Webster Engineering Corporation (hereinafter referred to as the company) and defendants William Wallace and Samuel Turchin, two of its employees, during the course of his employment by the company as a common laborer.

As is usual in such cases, the evidence is in conflict as to the cause and particulars of the accident. From the testimony of the witnesses and the exhibits introduced at the trial, we gather the following facts: On April 18, 1910, the company was engaged in the construction of a dam in the Missouri river at Hauser Lake, in Lewis and Clark county. The material used for the construction was concrete. It was put in in sections, being dumped into molds or forms built of heavy lumber by means of a skip operated by a derrick or from cars. When the concrete had hardened, the lumber forms were torn away and the material used for the construction of other forms as the work of construction progressed. These forms consisted of 12x12 upright timbers, lined on the inside with heavy planks. At the time of the accident a crew of carpenters and helpers, under the direction of Wallace, who had exclusive charge of this part of the work with power to hire and discharge men, were engaged in tearing away a form and setting the timbers in place for another. The timbers were lifted and moved by a derrick, the jib or mast of which was placed about eighty-five feet from the face of the completed section. The boom was seventy feet in length. Attached to the end of the boom was an iron chain twenty feet in length, the weight of which is estimated by the witnesses at from 170 to 300 pounds. It was connected with the boom by an oval link or ring at the end, slipped over the hook in the fall tackle attached to the boom. The hook was not moused or fitted with any device to prevent the chain from being accidentally unhooked. The section which had been completed, and from which the timbers were being

removed, extended along the course of the river and ended at or near the lower side of the dam. The form in course of construction extended across the course of the river. At this point the main body of the work had been completed to the height of about seventy-five feet from the river bed. The newly completed section was thirty feet in height and formed a ledge along the transverse face of the higher structure. On this ledge were stationed several men whose business it was to assist in removing the timbers by means of the derrick. Among these was defendant Turchin. The derrick was operated by an engine placed beyond the mast or jib from the point of operation. Its movements were controlled by the engineer in obedience to signals given by Wallace. Wallace's position was upon a scow resting in the bed of the river immediately below the dam, and about five feet outside of the line of the new form. The form was some thirty feet in height. It rested upon a base of concrete near the level of the river bed, which had previously been put in. Several other men—carpenters and laborers, the plaintiff being among the latter—were below on the concrete base. Their business was to put in place the upright timbers and brace them so that they would be ready for the lining. Wallace's position on the scow was twelve or fifteen feet above them. When it became necessary to lift out one of the timbers, the chain was wrapped around it at the top and fastened by inserting a hook at the end of the chain in one of the links. Since the boom was not long enough to drop the chain at the place where it was desired to use it, it was hauled up by a rope by the men who were standing on the ledge, and was secured to a timber in the manner heretofore indicated. When in this position the line of its direction was at quite a wide angle from the perpendicular, so that if the end was released it would drop and swing as a pendulum. It had been secured to a timber, and the signal was about to be given to start the engine, when Wallace noticed a joint of heavy iron pipe lying on the concrete base below, which he thought might be broken during the handling of the timbers. He stopped the work in order that it might be removed, and directed the plaintiff to fit a chain around it so that it could

be lifted out of the way with the derrick. The plaintiff was in a stooping position engaged in adjusting the chain. Wallace ordered the men on the ledge to throw off or let down the chain. Turchin, who was standing near by, without waiting for help by the men standing near and without using a rope to ease it down, loosed it, and, being unable to hold it because of its weight, let it swing. It first swung away and then back. As it came back the lower end of it struck a brace timber, with the result that the chain was jarred off the hook in the fall tackle, and the lower end of it as it fell on the swing struck the plaintiff on the face and head, destroying an eye and inflicting other serious injuries. There is a direct conflict in the statements of the witnesses as to whether the lower end of the chain was high enough from the base to swing clear of a man standing thereon. As a whole, however, the evidence furnishes ground for the conclusion that the chain would not have reached plaintiff, had it not jarred from the hook and fallen.

The pleadings are somewhat voluminous. The allegations of the complaint may be comprehensively summarized as follows: That the defendants were culpably negligent (1) in failing to have the hook in the fall tackle moused or guarded so as to prevent the boom chain from becoming detached by a sudden jar or jolt; (2) in permitting the chain to be handled by one man, it being apparent that it was too heavy for one man to handle it safely; (3) in permitting the chain to be let down where other employees were at work, without a rope or other means by which it could be lowered with safety; (4) in maintaining and operating the derrick so far away from the place of work as to make probable the happening of such an accident as that which resulted in the injury to plaintiff; and (5) in failing to furnish the plaintiff a safe place in which to work.

The defendant Turchin suffered judgment by default. The answer of Wallace was a general denial. The company alleged that the derrick and other appliances were reasonably safe, were operated in a reasonably safe manner, and that, if the plaintiff was injured by the negligence of anyone, it was that of his fellow-servants. The trial resulted in a verdict in favor of plain-

tiff against the company. The jury made no finding with reference to Wallace. The court rendered judgment upon the verdict against the company and dismissed the action as to Wallace. The company has filed separate appeals from the judgment and an order denying its motion for a new trial. They will be considered together.

1. Counsel for plaintiff have presented a question of practice arising out of the proceedings on motion for new trial, which, if resolved in their favor, they insist, precludes a hearing of the appeal from the order denying the motion. We shall not notice it further than to say that we have examined it and have found it without substantial merit. The bill of exceptions was served and settled in time, in conformity with the requirements of the statute.

2. The first assignment of error is based upon the refusal of the court to submit to the jury defendant's requested instructions numbered 1 and 2. The instructions are too long to quote. In effect, the first one of them would have told the jury that the gist of the action was the negligence of the defendant company in failing to furnish the plaintiff a reasonably safe place in which to work; that the burden was upon him to establish each and every act constituting an element of the negligence of the company alleged; and that, if the jury believed from the evidence that the chain did not become detached from the hook in the fall tackle and that the injury was not proximately caused [1] in this way, they should find for the company. The theory of the case adopted by the court, as indicated by the instructions submitted, was that the company was culpable if it appeared from the evidence that it had failed to exercise ordinary care to furnish the plaintiff a reasonably safe place in which to work, reasonably competent follow-servants, sufficient in number to accomplish the work, and reasonably safe appliances, and the injury was caused by its lapse of duty in any one of these particulars, although there might have been concurring negligence on the part of Wallace or plaintiff's fellow-servant Turchin. No fault is found with the theory upon which the court proceeded. If it be accepted as correct—and we think it

was—the instruction was properly refused. It assumed that the liability of the company was to be determined solely upon the evidence tending to show whether it did or did not meet the requirements of its duty with reference to the place in which plaintiff was put to work, and whether the place was safe, was made to turn exclusively upon the question whether the chain became detached from the fall tackle. The safety of the place depended in part upon the safety of the appliance in use. If the appliance was unsafe because of the failure of the company to exercise reasonable care in selecting it, the company was culpable, though Wallace negligently permitted Turchin to undertake to let the chain down without help and without the aid of a rope or similar device, knowing that one man could not prevent it from swinging, thus adding to the peril of the men below, and though Turchin was guilty of negligence in letting it [2] swing as he did. The company was represented by Wallace. To him had been intrusted the direction of the work and the control of the men. He was therefore the *alter ego* of the company. (*Allen* v. *Bell*, 32 Mont. 69, 79 Pac. 582; *Hill* v. *Nelson Coal Co.*, 40 Mont. 1, 104 Pac. 876; *Gregory* v. *Chicago, M. & St. P. Ry. Co.*, 42 Mont. 551, 113 Pac. 1123.)

Together with its other duties, it was also incumbent upon the company, as a reasonably prudent person, to conduct the work in such a manner that the hazard resulting from the character [3] of the appliances or the place should not be enhanced. Liability may be predicated upon a negligent system or mode of doing work or upon a negligent method of using machinery or appliances which are entirely free from defects. (*Stewart* v. *Stone & Webster E. Corp.*, *ante*, p. 160, 119 Pac. 568; *Keast* v. *Santa Ysabel G. M. Co.*, 136 Cal. 256, 68 Pac. 771; *McVay* v. *Mannheimer Bros.*, 113 Minn. 225, 129 N. W. 371; *Thomas* v. *Cincinnati etc. Ry. Co.* (C. C.), 97 Fed. 245; *Kreigh* v. *Westinghouse etc. Co.*, 214 U. S. 249, 29 Sup. Ct. 619, 53 L. Ed. 984.) If, therefore, Wallace, the superintendent, was shown to have been negligent in the method pursued in handling the chain, assuming that the mode of attaching it to the fall tackle was reasonably safe, the increase of the hazard thereby wrought ne-

cessarily added to the peril of all the men at work on the concrete base below, and both he and the company were liable for any resulting injury. If, for illustration, he should have required the men at work on the ledge to lower the chain by means of a rope and failed to do so, this was culpable negligence. (*Stewart* v. *Stone & Webster E. Co., supra; Boden* v. *Demwolf* (D. C.), 56 Fed. 846.) Again, if he permitted Turchin unaided to undertake to lower the chain, knowing that by reason of its weight Turchin could not hold it, he was guilty of negligence which [4] must be imputed to the company; for it is also a duty of the master to provide a sufficient number of servants to perform the work with reasonable safety. (26 Cyc. 1292; 4 Thompson on Negligence, 4865; *Boden* v. *Demwolf, supra; Supple* v. *Agnew,* 191 Ill. 439, 61 N. E. 395.) The master is not to be held blameless if the negligence or inadvertence of a fellow-servant [5] concurs with his negligence in causing the injury. (*O'Brien* v. *Corra-Rock Island Min. Co.,* 40 Mont. 212, 105 Pac. 724.) In effect, the instruction would have eliminated from the case the question of the culpability of the company touching any other duty than that to furnish a reasonably safe place. It would have excluded from consideration of the jury the question whether Wallace, and therefore the company, was negligent in permitting Turchin to handle the chain alone, without any means of preventing it from swinging out over the men below. It would have eliminated altogether the question whether the method pursued had been selected with reasonable care, and whether, assuming that the appliance was defective, any negligence on the part of Turchin increased the peril. It also required the plaintiff to prove all the acts of negligence alleged. [6] Plaintiff may offer evidence to establish all the acts of negligence alleged, but he is not required to do so. Proof of any one or more of them which approximately caused the injury will sustain a recovery. (*Mize* v. *Rocky Mt. Bell Tel. Co.,* 38 Mont. 521, 129 Am. St. Rep. 659, 100 Pac. 971; *Moyse* v. *Northern Pac. Ry. Co.,* 41 Mont. 272, 108 Pac. 1062; *Frederick* v. *Hale,* 42 Mont. 153, 112 Pac. 70.)

A portion of the second instruction, modified so as to make it applicable to the facts appearing in the evidence, was submitted to the jury. The portion refused was open to the objection that it would have told the jury that if they found that the company had provided reasonably safe and suitable machinery with which to do the work, and competent persons to give directions, signals, and shouts of warning in and about the work, they should return a verdict for the defendants. In this respect it was open to the same objection as that we have pointed out with reference to instruction No. 1, in that it excluded from the case facts and circumstances which were properly to be submitted to the consideration of the jury.

3. When the verdict was returned, the defendant company submitted a motion for judgment in its favor, on the ground [7] that the action being joint against the company and Wallace, and the jury having found that Wallace, the vice-principal, was not guilty of any negligence, they thereby found that the company was without fault. It is argued that the motion should have been sustained. We do not think so. If it be assumed that it was the duty of Wallace, as the *alter ego* of the company, both to furnish the appliances and direct their use, the silence of the verdict as to him, even if it be regarded as a verdict in his favor, does not determine that the company was not negligent. It is the general rule that, where one has received an actionable injury at the hands of two or more persons acting concurrently or independently of each other, if their acts unite in causing the injury, all of the wrongdoers are jointly and severally liable to him for the full amount of the damages suffered by him, and he may enforce the liability by an action against them severally, or all jointly, or any number of them less than all. (Cooley on Torts, pp. 24, 252.) It is no [8] objection to the joinder of them all in the same action that one is liable upon the principle of the maxim *respondeat superior*, and the others are chargeable personally. This rule has been frequently recognized and applied by this court. (*Golden* v. *Northern Pac. Ry. Co.*, 39 Mont. 435, 104 Pac. 549; *Rand* v. *Butte Electric Ry. Co.*, 40 Mont. 398, 107 Pac. 87; *Logan* v.

*Billings & Northern Ry. Co.,* 40 Mont. 467, 107 Pac. 415; *Knuckey* v. *Butte Electric Ry. Co.,* 41 Mont. 314, 109 Pac. 979.) The plaintiff having proceeded against all or some of the wrong-doers jointly, and there being no contribution between them, he may have judgment against some or all whose concurrent acts caused the injury, or against any one of them by whose sole act it was caused.    He is not to be nonsuited because he has brought too many defendants into court.

There is a conflict of authority as to what is the legal effect of a verdict such as was returned in this case.    The case of *Doremus* v. *Root,* 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649, is cited in support of the view that the failure of the jury to find the issues for or against the defendant Wallace made it a verdict in his favor, and since he, the agent through whom the company acted and through whom alone it could be held liable, was found without fault, the judgment upon the verdict against the company cannot be permitted to stand.    In that case the injury was alleged to have been caused by the negligence of an engineer in charge of a train belonging to the Oregon Railroad & Navigation Company, one of the defendants.    When the verdict was returned which found against the company and was silent as to the engineer, the trial court held that in so far as it affected the defendant engineer it was a verdict in his favor, and rendered judgment against the company and in favor of the engineer.    The supreme court held that the judgment should have been in favor of the company also, upon the theory that the finding that the engineer was free from fault exonerated the company because the company was at the time acting through him.

In the case of *Illinois Central Ry. Co.* v. *Murphy,* 123 Ky. 787, 97 S. W. 732, 30 Ky. Law Rep. 98, 11 L. R. A., n. s., 356, in which the relations between the parties defendant were the same as in the Washington case, the court said: "It does not follow that the same verdict need have been rendered against the company and its engineer.    We can think of cases where possibly the engineer ought to be held to the stricter account, and *vice versa;* but, let that be as it may, if the plaintiff is entitled

to his verdict against two tort-feasors, but the jury are able to agree only as to one of them, and gives a verdict accordingly, we know of no law that prevents the plaintiff from having at least what the jury has given him. If he failed to get the verdict against another also liable, the plaintiff may be aggrieved, but not the defendant.''

In *Texas & Pac. Ry. Co.* v. *Huber* (Tex. Civ. App.), 95 S. W. 568, the jury returned a verdict against the railway company and in favor of the engineer. On appeal the defendant made the same contention as is made here. The court said: ''We also overrule the tenth assignment, which contends that a motion in arrest of judgment ought to have been sustained because the verdict in favor of Oliphant [the engineer] was a finding that he was free from negligence, and, he being the agency through which the railway company committed the negligence, if any was committed, the verdict against this appellant was unfounded. The question was considered in *Railway Co.* v. *James,* 73 Tex. 12, 15 Am. St. Rep. 743, 10 S. W. 744, where it was held, in a case of similar character, that, although such a verdict has the appearance of being based on inconsistent and contradictory findings of the jury, this is not of itself enough to require the reversal of a judgment against the passive defendant; the reason being that the finding in favor of the defendant whose act constitutes the negligence complained of, and the finding against the other in the same case by the same jury, can be attributed to improper conduct of the jury in arbitrarily exonerating the former, and not necessarily to a finding that there was no negligence on his part. It has often been held that, where the servant or agent who was the real active wrongdoer has been sued, and a judgment has been rendered in his favor, it will be a bar to a judgment against the employer or principal. This rule is not deemed applicable where the verdict in favor of the agent or servant nevertheless bears intrinsic evidence that the jury found that the wrongful act complained of had been committed by the agent or servant.''

The conclusions reached by jurors are sometimes inexplicable. Often they arbitrarily find against one party and in favor of

another without any apparent reason; but, if the evidence justifies the verdict as to the party held, there is no reason why it should not be deemed good as to him, notwithstanding there is no finding as to the other. It seems to us that the better rule is that, if the evidence is such that the jury might have found against both the master and the servant, the plaintiff should not be denied his recovery against the master because the jury were unable to agree upon a verdict against the servant, or arbitrarily disregarded the evidence tending to show negligence on the part of the servant.

In the instant case the charge of negligence is against both defendants. To furnish suitable appliances was primarily the duty of the company. The evidence justified the finding that the derrick hook was defective in that it was not moused or guarded. If the company failed to exercise ordinary care in selecting this, it was guilty of negligence whether it imposed the duty upon Wallace to select and furnish it, or whether it furnished it through some other agency and imposed upon Wallace the duty only to adopt the plan of its use. The evidence is silent on this point. This being so, a verdict in favor of Wallace is not conclusive as to the company. The action of the jury is therefore clear, if, as was probably the fact, it be assumed that the jury found that the company was negligent in the performance of its primary duty to furnish a reasonably safe appliance, and could not agree as to whether Wallace was negligent in the selection of the mode of its use. From this point of view, the principle underlying the decision in the Washington case does not apply; for the negligence charged there was not the failure to furnish a suitable appliance, but was negligence of the engineer in handling his train.

The plaintiff might have dismissed the action as to Wallace and proceeded against the company alone, or he might have proceeded against the company alone in the first instance. He might have insisted upon a verdict as to both defendants. Having elected not to do so, but to take judgment against **[9]** the company alone, his course amounted to a dismissal as to Wallace. (*Rankin* v. *C. P. R. Co.*, 73 Cal. 93, 15 Pac. 57;

*Fowden* v. *Pacific C. S. S. C. Co.,* 149 Cal. 151, 86 Pac. 178.) The failure of the jury to find as to Wallace should be regarded as no finding upon the issues as to him at all.

The foregoing discussion incidentally disposes of two other contentions made by counsel for defendant, *viz.,* that the verdict is against law, and contrary to the evidence.

The judgment and order are affirmed.

*Affirmed.*

Mr. Justice Smith and Mr. Justice Holloway concur.