MELZNER, Admr., Respondent, *v.* RAVEN COPPER CO., Appellant.

(No. 3,254.)

(Submitted April 18, 1913.    Decided May 13, 1913.)

[132 Pac. 552.]

*Master and Servant—Mines and Mining—Personal Injuries— Respondeat Superior—Complaint—Sufficiency—Joint Tort- feasors—Verdict as to One—Effect—New Trial—Record— Insufficiency—Instructions.*

Personal Injuries—Master and Servant—Contributory Negligence—Complaint—Sufficiency.
1. *Held,* that the plaintiff in an action to recover damages under section 5248, Revised Codes, need not allege in his complaint that the injury sustained was caused "without contributing negligence on his part," such negligence being matter of defense to be asserted and shown by defendant employer unless made apparent by plaintiff's own pleading or proof.

Same—Joint Tort-feasors—Verdict as to One Only—Effect.
2. Where the verdict in an action for wrongful death brought jointly against a mine operator and a hoisting engineer under section 5248, Revised Codes, by which the former is made responsible for injuries to his employees under the maxim *respondeat superior,* was silent as to the engineer, the failure of the jury to find as to him was not a finding of non-negligence on his part, but should be regarded as no finding as to him.

Same—Appeal and Error—New Trial—Record—Insufficiency.
3. An alleged irregularity said to have prevented appellant from having a fair trial, not shown by the record to have been called to the attention of the court, although the notice of intention to move

for a new trial specified irregularity in the proceedings as one of the grounds, will not be reviewed on appeal.

Same—Verdict Contrary to Law—Review—Record—Insufficiency.

4. A verdict is contrary to law when the condition of the evidence is such that the jury may not find otherwise than in accordance with the instructions, and yet have ventured to do so.

Instructions—When Properly Refused.

5. An instruction unsupported by the pleadings or evidence, as well as contrary to the theory on which the party offering it tried the case, may properly be refused.

Same—Refusal—Review—Record—Insufficiency.

6. Where the record, though giving the settlement of certain instructions, failed to set out the instructions as read to the jury, refusal to give one offered by appellant will not be reviewed.

Personal Injuries—Contributory Negligence—Instructions—Proper Refusal.

7. Where neither the complaint nor the evidence of plaintiff in an action for negligent death was such as to raise the presumption of contributory negligence on the part of decedent, no burden of showing freedom therefrom rested on plaintiff; therefore an instruction placing such burden upon him was properly refused.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by A. B. Melzner, administrator of the estate of J. W. Martin, deceased, against the Raven Copper Company. From a judgment for plaintiff, and an order denying it a new trial, defendant appeals. Affirmed.

*Messrs. Kremer, Sanders & Kremer,* and *Mr. J. A. Poore,* for Appellant, submitted a brief; *Mr. Poore* argued the cause orally.

Under section 6711, Revised Codes, a verdict may be returned against one only of several defendants, but it must be in favor of the other defendants. A verdict in any other form is fatally defective and cannot stand; and it will not do to say that because the verdict in this case is against the Raven Copper Company alone, the other defendant must have been negligent. Such a contention ignores the plain meaning and construction given section 6711, requiring the verdict to be for or against each defendant. There is a mistrial, requiring a new trial, where there is a verdict for plaintiff against one defendant only, and no verdict for or against the other defendant. (*McMahon* v. *Hetch-Hetchy etc. R. Co.,* 2 Cal. App. 400, 84 Pac. 350.) The entry of a judgment which does not dispose of all of the de-

fendants is reversible error, and a dismissal as to the other defendants not included in the judgment after the judgment has been entered could not cure the defect in the judgment. (*Ward* v. *Stanley,* 41 Ill. App. 417.)

The ordinary rule that among tort-feasors there is no contribution does not apply here, for there is no allegation that the Raven Copper Company was delinquent in any respect or violated any of its primary duties toward Martin. The sole act for which it is alleged it should respond in damages is the negligence of the hoisting engineer. Thus, it appears that this action does not fall within those where there are joint tort-feasors charged with negligence. If the engineer was not negligent, the company is absolved. If the engineer was negligent, and such negligence was properly made to appear by the verdict of the jury, then the company is responsible, no matter how completely it complied with its common-law obligations owing the deceased. But, inasmuch as the only possible negligence alleged was that of the hoisting engineer, if the appellant is compelled to pay the judgment entered in this case, it should have the right to proceed against McPherson to compel him to reimburse it for the damages it has sustained by reason of his sole negligence and which it has been compelled to pay. But a verdict like the one returned which is absolutely silent as to McPherson is a finding in his favor (*Westfield G. & M. Co.* v. *Abernathy,* 8 Ind. App. 73, 35 N. E. 399; *Kinkler* v. *Junica,* 84 Tex. 116, 19 S. W. 359; *Gulf etc.* v. *James,* 73 Tex. 12, 15 Am. St. Rep. 743, 10 S. W. 744; *Lawson* v. *Robinson,* 68 Kan. 737, 75 Pac. 1012; *Howard* v. *Johnson,* 91 Ga. 319, 18 S. E. 132; 22 Ency. of Pl. & Pr., 905, 959; 26 Am. & Eng. Ency. of Law, p. 1024, 1034), and the copper company is prejudiced and deprived of a right it undoubtedly ought to have preserved to it if the present judgment stands. (*Portland Gold Min. Co.* v. *Stratton's Independence,* 158 Fed. 63, 85 C. C. A. 393; *Bradley* v. *Rosenthal,* 154 Cal. 420, 129 Am. St. Rep. 171, 97 Pac. 875; *Indiana N. & T. Co.* v. *Lippincott Glass Co.,* 165 Ind. 361, 75 N. E. 649; *Doremus* v. *Root,* 23 Wash. 710, 54 L. R. A. 649, 63 Pac. 572; 26 Cyc. 1545 (c).)

The case of *Verlinda* v. *Stone & Webster Engineering Corp.,* 44 Mont. 223, 119 Pac. 573, is clearly distinguishable. The rule announced in that case is a logical and proper one in cases involving joint tort-feasors, for a defendant tort-feasor found guilty of negligence ought to bear the consequence of his neglect. But in the case at bar such a rule absolutely prevents the defendant, not a tort-feasor, but rendered liable by law to pay for the damages done by the servant who was solely the cause of the injuries, from recovering from the servant, whose neglect the defendant has to pay for, the pecuniary damages it has sustained by satisfying the judgment. In such a case, the rule finds no application, and to enforce it is to deprive the non-negligent defendant of a right of reimbursement which the law affords. (See, also, *O'Brien* v. *American Casualty Co.,* 58 Wash. 477, 109 Pac. 52; *Schweickhardt* v. *City of St. Louis,* 2 Mo. App. 571.) "A judgment on the merits against a master, in an action of trespass, for the act of his servant, is a bar to an action against the servant for the same act, though such judgment was not rendered till after general issue pleaded to the action against the servant." (*Emery* v. *Fowler,* 39 Me. 326, 63 Am. Dec. 627; *Ivanhoe Furnace Corp.* v. *Crowder,* 110 Va. 387, 66 S. E. 63; *Hayes* v. *Chicago Tel. Co.,* 218 Ill. 414, 2 L. R. A. (n. s.) 764, 75 N. E. 1003; *McGinnis* v. *Chicago, R. I. & P. Ry. Co.,* 200 Mo. 347, 118 Am. St. Rep. 661, 9 Ann. Cas. 656, 9 L. R. A. (n. s.) 880; *Stevick* v. *Northern Pac. Ry. Co.,* 39 Wash. 501, 81 Pac. 999; *Sipes* v. *Puget Sound E. Ry.,* 54 Wash. 47, 102 Pac. 1057; *Morris* v. *Northwestern Imp. Co.,* 53 Wash. 451, 102 Pac. 402.)

This is purely a statutory action, and the plaintiff must bring himself clearly within the statute in order to state a cause of action. (*New Bedford, City of,* v. *Inhabitants of Hingham,* 117 Mass. 445; *Haskins* v. *Alcott,* 13 Ohio St. 210; 36 Cyc. 1237.) We recognize the rule that in a common-law action contributory negligence is a matter of defense, but when plaintiff relies upon a particular statute which expressly contains as an essential ingredient the provision that he must be free from contributing negligence, it then becomes a condition precedent to his right to recover to allege and prove this condition. It is also a well-

recognized principle of law that when an exception is a constituent part of a statute, it must be negatived by the pleader,— it no longer becomes a matter of defense, but is affirmative matter to be alleged in the complaint and proved before the party relying upon the statute is entitled to recover. (*Barksdale* v. *City of Laurens,* 58 S. C. 413, 36 S. E. 661; *Shea* v. *Boston & Maine R. Co.,* 154 Mass. 31, 27 N. E. 672; *Cleveland etc. R. Co.* v. *Bossert,* 44 Ind. App. 245, 87 N. E. 158; *Cleveland Ry. Co.* v. *Foland* (Ind. App.), 88 N. E. 787; *Indianapolis etc. Transit Co.* v. *Foreman,* 162 Ind. 85, 102 Am. St. Rep. 185, 69 N. E. 669; *Southern R. Co.* v. *Salmon,* 132 Ga. 753, 65 S. E. 70; *Cole* v. *Mayne,* 122 Fed. 836.)

*Messrs. Maury, Templeman & Davies,* and *Messrs. Davies & Lyons,* for Respondent, submitted a brief; *Mr. H. L. Maury* argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

The respondent prosecutes this action as administrator of the estate of J. W. Martin, who died on March 11, 1910, leaving a widow and two children. The complaint, which is against appellant Raven Copper Company and Malcolm McPherson as defendants, details the cause and manner of Martin's death as follows: He was foreman in the Raven mine, which was being operated by appellant through a shaft, by means of certain hoisting apparatus, including an engine, cable and skip, in charge of Malcolm McPherson as hoisting engineer; while in the performance of his duties as foreman and "on the said 11th day of March, 1911, when the said skip was at rest in said shaft at about the 1,140 station of said shaft, * * * the said J. W. Martin, who had just prior to the time the said skip came to a rest at said station been riding upon the same, attempted to get off the said skip at said station, and while attempting to get off of said skip, and yet not being off the same, the said defendant hoisting engineer Malcolm McPherson, carelessly and negligently, without any signal so to do, raised said skip and negligently caught said J. W. Martin between the said skip and

the said shaft timbers at said station, and so grievously injured him that he died a few minutes thereafter.'' To this complaint the defendants interposed separate general demurrers, which were overruled; whereupon they separately answered. The answers, which are identical in substance, deny the facts pleaded in the complaint on which negligence is charged, and as affirmative defenses they plead: (a) That the injuries and death of Martin were due to his own sole negligence in that while the skip was ascending in accordance with his signals, he, without signaling the engineer to stop the skip and without any knowledge on the part of the engineer, and without any necessity for so doing, voluntarily attempted to get off said skip while it was in motion, at a point where said skip did not usually or at all stop, and in so doing was caught between the ascending skip and timbers; and (b) that the danger of attempting to leave said skip while the same was in motion was obvious and was, or should have been, known to and appreciated by Martin.

The affirmative pleas in the answer were denied by the reply, and the cause in due time came on for trial before the court sitting with a jury. It is quite clear from the pleadings that the determinative issues were whether the skip was in motion or at rest when Martin started to get off; and, if it had stopped and moved again without a signal, whether these events were due to the negligent act or omission of the engineer. The testimony of John Koskinen, an eye-witness to the accident, is distinct and positive that the skip had stopped and was at rest three feet below the proper spot when Martin was getting off and that it moved upward without a signal, catching Martin between the skip and the timbers. Equally distinct and positive was the testimony of the engineer and two other persons that he did not stop the engine by which the movements of the skip were controlled until the proper mark was reached, nor start it again without a signal. There was evidence also to the effect that if the skip did stop before it reached the proper spot it may have been due to the elasticity of the cable in connection with the variations in the descent of the shaft. The value of all this was for the jury; and the verdict was against the appellant Raven

Copper Company, without mention of McPherson. Judgment was entered accordingly. Thereafter both defendants joined in a motion for new trial, which was denied. This appeal is by the company alone from the judgment and from the order overruling the motion for new trial.

1. The appellant insists that the complaint does not state facts [1] sufficient to constitute a cause of action, in that "it fails to allege one other essential fact—that the injury was caused without contributing negligence on the part of John Martin." This it is argued was necessary, not because the complaint alleges an affirmative act of the deceased as a proximate cause of his injury, but for these reasons: That this is a purely statutory action, based upon section 5248, Revised Codes, and the plaintiff, to state a cause of action under it, must plead himself clearly within its provisions; that in this section, which makes the mine owner liable for any damage sustained by an employee without contributing negligence on his part, when such damage is caused by the negligence of a hoisting engineer, the phrase "without contributing negligence on his part" constitutes an exception from which the pleader must exclude himself. We think the position untenable. This action is not a "purely statutory action," in the sense in which counsel apparently use that term. In two decisions of this court it was held that the purpose and effect of section 5248 are to classify the employees in mines, mills, and smelters by declaring who among them are vice-principals, to make the employer answerable in certain cases under the maxim of *respondeat superior,* and in such cases to take away a defense which had been available before the passage of the statute. (*Thurman* v. *Pittsburg & Mont. Copper Co.,* 41 Mont. 141, 150, 108 Pac. 588; *Beeler* v. *Butte & London C. Dev. Co.,* 41 Mont. 465, 475, 110 Pac. 528.) Doubtless, as regards this purpose, the pleader must bring himself within the statute, and he may not recover by virtue of it upon a complaint which discloses no basis for *respondeat superior,* but grounds itself wholly upon a breach of primary duty on the part of the master. (*Thurman* v. *Pittsburg & Mont. Copper Co., supra; Kelly* v. *Northern Pac. Ry. Co.,* 35 Mont. 243, 88 Pac. 1009.)

But this is to prevent variance and surprise, to enable the defendant to make such defenses as may be appropriate, and falls far short of saying that the statute creates a cause of action or that other situations recognized by the general law as affirmative defenses are in anywise affected. To our minds, the phrase "without contributing negligence on his part" is a mere proviso or qualifying clause, inserted to forestall any possible interpretation of the statute as also abolishing the defense of contributory negligence. And this finds support in the consideration of the title and purview of the original enactment. So far as this clause is concerned it is as if the statute read: "Every person operating a mine shall be liable for any damage sustained by any employee thereof within this state, when such damage is caused by the negligence of a hoisting engineer, *etc.,* unless the employee was himself guilty of contributory negligence." Such a proviso need not be negatived in the complaint. (*Lorimer* v. *St. Paul City Ry. Co.,* 48 Minn. 391, 51 N. W. 125; *Rowell* v. *Janvrin,* 151 N. Y. 60, 45 N. E. 398; *Columbus & W. Ry. Co.* v. *Bradford,* 86 Ala. 574, 6 South. 90; *Acker et al.* v. *Richards,* 63 App. Div. 305, 71 N. Y. Supp. 929; *Territory* v. *Burns,* 6 Mont. 72, 9 Pac. 432; *State* v. *Stapp,* 29 Iowa, 551; 36 Cyc. 1238; Bliss on Code Pleading, sec. 202; Phillips on Code Pleading, sec. 239.) By the statute the rule that the mine owner shall not be liable for injury to any employee due to the negligence of a fellow-servant is changed, but the rule that the employer shall not be liable if the employee was guilty of contributory negligence is unchanged. Now, as before the passage of the Act, if the employee was guilty of contributory negligence, that is a defensive fact to be asserted and shown by the defending employer, unless it appear from plaintiff's own pleading or proof.

2. The next serious contention is that the verdict of the jury, [2] being silent as to McPherson, amounts to a finding that he was not guilty of negligence; that inasmuch as the action is predicated solely upon his alleged negligence, the company being held only under *respondeat superior,* no judgment can properly go against it if he was not guilty as charged. Granting the pre-

mise, there may be some force in the conclusion. The subject, however, is not an open one in this state. In *Verlinda* v. *Stone & Webster Engineering Corp.*, 44 Mont. 223, 119 Pac. 573, this court, discussing a similar verdict, said: "The conclusions reached by jurors are sometimes inexplicable. Often they arbitrarily find against one party and in favor of another without any apparent reason; but, if the evidence justifies the verdict as to the party held, there is no reason why it should not be deemed good as to him, notwithstanding there is no finding as to the other. * * * The failure of the jury to find as to Wallace should be regarded as no finding upon the issues as to him at all." So, here, McPherson has not been acquitted of negligence, but the case as to him stands as though it had not been tried. This being true, it also follows that the failure of the jury to find as to McPherson cannot be seriously considered in the light of an irregularity in the proceedings by which the Raven Company was prevented from having a fair trial. Even if it was an irregularity in the sense of the statute on new trials, we do not see how the company was prejudiced by it; the company still has whatever right of action it ever had against McPherson. It never did have any absolute right to his presence as a defendant in this particular case. That was optional with the plaintiff. Had McPherson not been joined in the first instance, the cause would have proceeded without him, its merits would have been exactly the same, it would have been supported by substantially the same evidence, and the fairness of the trial, wherever had, would have been entirely unaffected. How, then, is it affected by the circumstance that no adjudication was made as to McPherson, who, though made a party, was not a necessary one? But if the failure of the jury to find as to Mc-

[3] Pherson was an irregularity by which the company was prevented from having a fair trial, we cannot consider it here, for the reason that, although the notice of intention to move for a new trial specifies irregularity in the proceedings in general terms, the record does not disclose that any complaint, objection, exception, or mention was ever made to the trial court of the

particular matter relied on. It would be a manifest impropriety to review a matter of this kind on such a record.

3. Among other instructions the court gave the jury the following: "19a. * * * It is incumbent upon the plaintiff to prove by a preponderance of the evidence, before the plaintiff can recover in this action, that the hoisting engineer, in the exercise of ordinary care, knew or should have known that the deceased intended to get off or would be likely to get off said skip at the place at which he was injured." And: "21a. * * * If from all of the evidence in this case you find that the deceased ordered the hoisting engineer to hoist him on the skip from the 1,300-foot level of the Raven shaft to the place described in the evidence as 'the 1,140,' and the hoisting engineer, as a reasonably careful person did not know or should not have anticipated that the deceased would attempt to get off of said skip before it reached the place in said shaft designated as the '1,140,' plaintiff cannot recover and your verdict will be in favor of the defendant." It is now urged that the verdict is contrary to these instructions and therefore against law, because the hoisting engineer testified that Martin just before going into the shaft said: "I am going to the 1,300 and I will send up the skip and possibly three skips of water and come up to the 1,140 and pick up John (Koskinen) and take him to the 400," without expressing any intention to get off or indicating that he had any duties to perform at the 1,140, other than to pick up John. "A verdict is contrary to the law when the condition of the [4] evidence is such that the jury may not find otherwise than in accordance with the theory of the instructions, and yet have ventured to do so." (*Previsich* v. *Butte El. Ry. Co., ante,* p. 170, 131 Pac. 25, 28.) We do not think the verdict is without support in the evidence under the instructions quoted. They were given at the instance of the defendants, and, without discussing their correctness either in the abstract or with relation to the theory of the case as tried by the defendants, we content ourselves with observing that they are predicated on the idea that the accident was due to some act or omission of the engineer which would have been negligence if he knew, or should have

known, that Martin might get off, but which was not negligence in the absence of such knowledge, actual or imputed. As shown by the evidence, it was the duty of the engineer not to move the skip after it had stopped with a man on board, without a signal; that he knew this is obvious from his own testimony; he knew, or should have known, that Martin, as foreman, had the same knowledge and might rely upon it; he knew that the 1,140 was not a level or station, properly so called, but a mere water-loading point; he had been in the shaft and presumably knew that the 1,140 was not lighted; he knew that Martin was on the skip because the signal complied with the prearrangement; he knew, or should have known, that Martin, as foreman, might find it necessary or advisable to get off at the 1,140 or at any other place in the mine to which he might order himself taken; and he knew that a man was to be picked up at the 1,140. Martin had not said he would not get off, and since the skip, once it had stopped, could not again properly proceed without a signal, there was no reason why he should not get off if he supposed himself to be at the point to which he had ordered himself taken or if other occasion required. It was the duty of the engineer to realize this and to so handle the skip that Martin might get off, or that Koskinen might get on, with safety. If he did not do this, the effect of his negligence cannot be avoided upon the ground that he had no reason to anticipate that Martin might get off.

4. Complaint is made of the court's refusal to give defendants' offered instructions Nos. 28a, 10a, 24a and X. We see no error here. One of the postulates of 28a is that it was the customary method of McPherson in raising the skip to the 1,140 to stop it at a point below the proper spot in order to steady it. This proposition has no support in the pleadings, is outside the evidence, and is directly contrary to the theory on which defendants tried the case, *viz.,* that the skip did not stop below the proper spot, or, if it did, its stopping was not due to any act or omission of the engineer.

As to 10a, it was the defendants' theory that if the skip did stop below the proper spot as claimed by plaintiff, it was due

[5]

to the elasticity of the cable and to the sinuosity of the shaft causing the cable to waive, flap or jerk, which in turn caused the loaded skip to halt and momentarily stop when slowly approaching the station. They say they were entitled to have this theory presented to the jury as a reasonable explanation of the premature stop, if there was one, and that instruction 10a was designed for that purpose. We cannot perceive the design, but we do perceive a confusion of unrelated ideas which might have misled the jury had the instruction been given. Moreover, the record, while it gives the settlement of certain instructions, [6] does not anywhere set out the instructions as read to the jury; so that we do not know but what the jury may have been told everything that counsel now say was intended by offered instruction 10a.

The refusal of offered instruction 24a was proper, because neither the complaint nor the plaintiff's evidence was such as to raise the presumption of negligence or of contributory negligence. Hence no burden of exculpation was cast upon him. [7] Aided by the presumption that the deceased was exercising due care for his own safety and by the evidence that the skip had stopped when he attempted to get off, the most that can be said is that the whole case presents an issue upon the question of negligence. We may add that contributory negligence was not really an issue in the case.

Offered instruction X was a flat direction to find for the defendants. The alleged error in refusing this is submitted by counsel "under our discussion upon the question as to the verdict being contrary to instructions 19a and 21a and the failure of plaintiff to present sufficient competent proof of the negligence to the jury; furthermore, we discuss elsewhere in this brief the insufficiency of the complaint and refer thereto as a part of our argument under this error." The giving of instruction X would not have been justified by any of the considerations suggested.

5. The only remaining errors assigned are those numbered 1, 7, and 8. No. 1 relates to a question asked on cross-examination of the witness, Donald Martin. Whether the question was proper or not, the incident was too trivial to assign as ground for

reversal. If it is any satisfaction to counsel, we express the opinion that the witness took excellent care of the question and that no harm apparently was done.

Concerning assignments 7 and 8 counsel for appellant say: "For the reasons hereinbefore presented it necessarily follows that in overruling the motion for a new trial and in entering judgment the court erred." We have canvassed all the reasons presented and cannot see that any of them would justify a reversal.

The judgment and order appealed from are therefore affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE HOLLOWAY did not hear the argument and takes no part in the foregoing decision.