[Civil No. 3017. Filed July 3, 1931.]

[300 Pac. 1020.]

GEORGE W. MILLER and CHARLES C. MILLER, Jr., Doing Business Under the Firm Name of MILLER BROTHERS MOTORS, Appellants, v. EARL J. HALEY, Appellee.

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld, for Appellants.

Mr. Terrence A. Carson and Mr. E. J. Hilkert, for Appellee.

LOCKWOOD, J.—Earl J. Haley, hereinafter called plaintiff, brought suit against George W. Miller and Charles C. Miller, Jr., copartners under the firm name of Miller Brothers Motors, hereinafter called defendants, to recover possession of a certain automobile, or for the sum of $500, the alleged value of the property, and for $200 damages for its wrongful detention.

Defendants answered with a general denial, and the matter was tried before a jury, which found in favor of plaintiff and assessed the value of the automobile at $360, and the damages for its detention at $350. Plaintiff in open court remitted all damages in excess of $200, and having elected to take the value of the property, judgment was rendered in his favor for the sum of $560. From this judgment and the order overruling a motion for new trial defendants have appealed.

Under our familiar rule we must resolve all conflicts in the evidence in favor of such a theory of the facts as will support the verdict of the jury. *Securities Corp. Consolidated* v. *Babbitt Motor Co.*, 36 Ariz. 438, 286 Pac. 820. So viewed, the evidence shows the facts to be as follows:

Defendants are and have been for a number of years engaged in the automobile business in the city of Phoenix, selling Nash automobiles. Plaintiff was interested in the possible purchase of a certain specific type of car which had not been as yet received by defendants for inspection or demonstration, and more or less preliminary negotiations had been carried on in the matter. About October 4, 1929, defendants' salesman, and agent, one Jack Stanaland, called upon plaintiff at his place of business to solicit an order. Plaintiff informed Stanaland that he would not give one as he wanted to see the car first, because he was very particular about its color. Stanaland suggested that plaintiff give a temporary order so that the latter would have the first choice when the new cars came in, telling him that if he didn't want the car the order would not be binding, and under these conditions plaintiff gave the order.

Stanaland filled in a regular printed sales blank, used by defendants for the purpose of taking orders, and it was signed by both parties, Stanaland then putting it in his pocket. Plaintiff immediately said that he wanted a copy of the order, to which Stanaland agreed, and took another similar printed blank and wrote "Copy" at the top of it. Plaintiff then informed Stanaland that he would fill in the order, as he wanted to be sure it bore the indorsement, "This order subject to cancellation," whereupon Stanaland replied, "That is O. K.," and after plaintiff had filled in the printed order blank given him by Stanaland, placing thereon the phrase above quoted, the latter signed and returned it to plaintiff.

The order, among other things, provided that a car then owned by plaintiff would be accepted as part payment on the new car, and two payments still unpaid thereon were to be assumed by defendants, and after the execution of both copies of the order Stana-

land produced a blank form of bill of sale and asked plaintiff to sign it. Plaintiff, on Stanaland's promise that the blanks in the bill of sale would not be filled in unless and until the deal was completed, and that it would not be used without further authority from him, signed the form, none of the blanks being then filled in.

About three weeks later defendants notified plaintiff that the new cars had arrived, and the latter went down to the salesroom of defendants, and they were shown to him. None of them was of a color which suited him, and he thereupon informed defendants that he would not take a car. The next day, at the request of Stanaland, plaintiff again called at defendants' salesroom, parking his old car in the highway across from defendants' place of business. One of the defendants took him riding in the new car which had been offered him, and attempted to persuade him to take it, but he refused, stating that he would reimburse them for any outlay or expense incurred by them on the old car, but that he would call the deal off. At the termination of this conference he went to get into his old car, and found that defendants had taken possession of it, driven it off the street, and put it in their used car lot. There was some discussion then and later in regard to the matter, and an attempt to arbitrate it, but the parties could come to no agreement, and this action was brought. It is true that defendants' version of the whole transaction differs very materially from that of plaintiff, but there is evidence in the record which would sustain this theory of what actually happened, and as we have stated, the verdict of the jury thereon concludes the facts so far as we are concerned.

There are four assignments of error, but they all turn on one question of law, so we discuss the case from that standpoint. It is defendants' contention

that there was a binding contract of purchase and sale duly executed in writing between plaintiff and defendants, which was not on its face subject to cancellation, and that parol evidence was not admissible to vary that contract. It is the position of plaintiff, on the other hand, that there was never any contract of purchase and sale; that the transaction which occurred between himself and Stanaland on October 4th was an offer to purchase which was specifically made subject to cancellation, and that having exercised such option of cancellation before the purchase was completed, defendants had no right to take possession of his car.

The instrument on which plaintiff relies as showing the transaction was merely an order subject to cancellation is the one filled in by him and signed by Stanaland, which reads as follows:

"To Miller Bros.                    Phoenix, Ariz.

"Please enter my order for one New Nash Twin Ig 6—Coupe Model 482 automobile, furnishing and attaching only such equipment as is specified below: Extra equipment at the following extra prices:

"Copy         This order subject to          $1570
              cancellation if deal not
              satisfactory

"Deposit ——                         Total ——

"Net allowance for used car, it being expressly understood that said car will at time of delivery be up to specifications attached or subject to reappraisement and if less than this amount the balance cash payments will be increased in accordance therewith.

"Allowance on used Car Essex Coupe $450

"Balance to be paid by me at the office of —— upon delivery of car $1120.

"Delivery to be at your place of business on or after ——, 19——. . . .

"It is agreed that no change, alteration, interlineation or verbal agreement of any kind shall be effective to change, alter or amend the printed terms of this agreement, or the Nash Standard Warranty printed on the back hereof.

"This order is not binding upon you until accepted and signed by your Retail Manager.

"This contract shall not be assignable except with your written consent.

"Approved    Jack Stanaland     E. J. Haley
                Salesman         Purchaser

"Accepted ———    836 No. Central

                    Post Office Address

"By ————         3–1985

"Retail Manager      Telephone Number

"Filed April 11th, 1930."

The printed form of the copy delivered by Stanaland to defendants was in the same language, and contained all the writing inserted in plaintiff's copy, except the words, "This order subject to cancellation if deal not satisfactory."

In our opinion the whole case turns on the question of whether or not there was a completed contract of purchase and sale entered into between the parties, or whether it was merely an order to purchase subject to cancellation, which was not accepted by defendants upon the terms laid down in the offer. It is apparent from the terms of both copies of the order that it was not to become a binding contract until accepted by defendants' manager, and it is agreed by both parties that Stanaland had no authority whatever to bind defendants or, indeed, to do anything but take orders subject to approval by his employers. Such being the case, there could be no binding contract until whatever offer was actually made by plaintiff was accepted by defendants.

But defendants say they did accept the written offer which was signed by plaintiff and communicated to them by their salesman, and that they are not bound by the action of the latter, even if he did agree to accept the order subject to cancellation, unless they knew of his actions before they approved the order. The question then is: What was the legal

effect of the failure of Stanaland to communicate to his principals that the order was given subject to cancellation?

When a salesman with authority only to solicit orders fails to communicate to his principal the true terms of the order, the latter cannot enforce the order upon any other terms than those upon which it was made, regardless of his knowledge of such terms. *Davis* v. *Danforth,* 65 Iowa 601, 22 N. W. 889. This is but an application of the well-recognized principle that when one of two innocent parties must suffer as a result of the misconduct of the agent of one of the parties, the innocent principal must bear the burden caused by the act of the agent he has chosen. *Hughes* v. *Riggs Bank,* 29 Ariz. 44, 239 Pac. 297; *Shepard* v. *Pabst,* 149 Wis. 35, 135 N. W. 158. Had plaintiff in this case been attempting to *enforce* a contract according to terms stated by him to Stanaland, but not known to defendants, the situation would have been very different. But he is not asking for this, but rather to prevent their enforcing as against him a contract which he did not make. The argument of counsel for appellants and the cases cited in favor of their position would be most persuasive had the evidence shown a completed contract instead of a conditional offer, but on the facts as found by the verdict of the jury they are not in point.

The principles of law above stated, when properly applied, dispose of all four assignments of error.

For the foregoing reasons the judgment of the superior court of Maricopa county is affirmed.

McALISTER, C. J., and ROSS, J., concur.