[Civil No. 3768.   Filed October 9, 1937.]

[72 Pac. (2d) 417.]

ROSENZWEIG & SONS, JEWELERS, INC., a Corporation, Appellant, v. E. W. JONES, Appellee.

Messrs. Cunningham & Carson, for Appellant.

Mr. Mark B. Wilmer and Mr. James A. Walsh, for Appellee.

LOCKWOOD, J.—This is an appeal from a judgment giving damages for an alleged libel in favor of E. W. Jones, hereinafter called plaintiff, against Rosenzweig & Sons, Jewelers, Inc., a corporation, hereinafter called the company.

There are some seven specific assignments of error, but we think the case can and should be determined on certain general questions of law raised thereby. The facts necessary for a determination of the case may be stated as follows.

For some four years plaintiff was employed by the company as the manager of a jewelry store in Mesa, and had executed a fidelity bond in its favor with the Fidelity & Deposit Company of Maryland as surety. On May 18, 1934, he was discharged from his employment, and Max Reiter was substituted by the company as manager. On the 1st day of October of that year the company, acting through Harry Rosenzweig, I. Rosenzweig, and Newton Rosenzweig, who were the managing officers of the company, filed with the surety a claim under the bond above referred to, for a loss in the sum of $315, alleging in the claim that certain moneys and articles received by Jones, but which the company either owned or was responsible for, had been "misappropriated by the said E. W. Jones to his own use and benefit with the intent to fraudulently deprive the said Rosenzweig & Sons, Jewelers, Inc., of same." The surety, acting in the regular course of business, notified plaintiff of this charge against him, and thereafter he brought suit against the company, the three Rosenzweigs, and Max

Reiter, his successor as manager of the Mesa store of the company, for damages for libel.

The case was tried to a jury, and it appeared in plaintiff's case beyond contradiction that Max Reiter had no knowledge of, nor part in, the making of the claim to the surety, nor that there was any intention on the part of the company to make such a claim, although much testimony had been offered by plaintiff tending to show that Reiter had made various statements to third parties in regard to plaintiff, from which the jury might infer that he was actuated by a malicious desire to injure plaintiff. The defendants then moved for an instructed verdict in their favor, and particularly for an instructed verdict in favor of the defendant Max Reiter, on the ground the evidence failed to disclose any facts which would sustain a judgment against him, and, the court intimating that it was inclined to grant the motion as to Reiter, the plaintiff moved for a nonsuit as to the latter, which was granted. The motion for judgment in favor of the other defendants, however, was denied. Thereupon counsel for defendants moved to strike from the record all evidence and testimony concerning the statements made by Reiter to third parties in regard to the plaintiff, and, after some discussion, the court made the following ruling:

" . . . Therefore, the motion is granted, gentlemen of the jury, in so far as it pertains to any statements made by Mr. Reiter, if such statements were made, reflecting upon the honesty or integrity of the plaintiff, Jones, with reference to his stewardship in connection with the management of the business and during the time he was in that capacity or at or immediately after the departure as an employee of the defendant company. You are instructed in your consideration of the case to disregard such statements entirely."

There was no assignment of cross-error by plaintiff as to this ruling, so we must assume it was correct.

The case then proceeded and was finally submitted to the jury, which returned a verdict in favor of the plaintiff and against the company, but returned no verdict against the Rosenzweigs individually. After the usual motion for new trial was made and overruled, this appeal was taken.

There were certain other matters of evidence and proceedings during the trial which we will refer to in their proper place, but the above gives a fair picture of the situation.

The principal reason urged by the company for a reversal of the case may be stated as follows. Assuming that the claim made to the surety company was libelous, in that it charged that plaintiff had committed a felony, it is admitted by both plaintiff and defendants that it was qualifiedly privileged, and that, in order for plaintiff to recover damages against any of the defendants, he must prove not only the publication of the libel, but that it was made maliciously and with intent to injure him. It was, therefore, incumbent upon plaintiff to show, by legal evidence which would authorize the jury to draw such an inference, that the publication of the claim was malicious. A corporation can act only through its officers and agents, and the only method of showing that it was actuated by malice is by the conduct of some, at least, of these officers and agents. Plaintiff recognized this fact and introduced evidence of certain acts and statements by Reiter and the three Rosenzweigs, from which it is contended the jury might reasonably infer malice on their part imputed to the corporation. But, says defendant company, so far as any statements or acts of defendant Reiter reflecting on the honesty or integrity of plaintiff were con-

cerned, the court struck them from the record and ordered the jury to disregard them in its consideration of the case, so that such acts and conduct may not be used to sustain a claim of malice on behalf of the corporation, and, so far as any acts or conduct on the part of the three Rosenzweigs were concerned, since the jury failed to return a verdict against them, and it is admitted that they published the libelous statement, the only theory upon which a verdict in their favor would be legally permissible is that they were not actuated by any malice. If, therefore, no malice appears on the part either of Reiter or the three Rosenzweigs, there is nothing which would sustain a finding that the company itself was guilty of malice.

██ Let us examine the situation to see if this position is well taken. It is obvious that, since the malice imputed to the company can only be deduced from the acts or statements of some of its agents, if plaintiff fails to show any acts or statements on the part of such agents, from which malice may be reasonably inferred, he has failed to sustain the burden imposed upon him to show actual malice. The court, on motion, struck out all testimony in regard to any statements made by Reiter reflecting upon the honesty or integrity of the plaintiff, Jones. Since there is no assignment of cross-error on this point, we must assume the ruling was correct. *Webster* v. *Parks*, 17 Ariz. 383, 153 Pac. 455; *Barth* v. *A. & B. Schuster Co.*, 25 Ariz. 546, 220 Pac. 391. The only evidence which would authorize a jury to even surmise that Reiter had any malice, individually or as an agent of the company, against plaintiff were statements of this nature. There remains, therefore, nothing in the case which would authorize a jury to infer malice on behalf of the company by reason of the conduct of Reiter.

We come then to the acts and statements of the three Rosenzweigs. The testimony as to what they said and did in regard to plaintiff, aside from the actual filing of the claims which is alleged to be libelous, is in considerable conflict, and we think the jury might well have found either way upon the question as to whether or not the evidence showed malice on their part. Since admittedly they were the actual publishers of the libel, if it was done maliciously there was no legal reason justifying the jury in not returning a verdict against them for at least a nominal amount and, therefore, the only excuse for its conduct in that respect must have been that the jurors believed there was no malice on their part. We think that when the verdict of the jury can be sustained only on one theory of the evidence, we must assume that they followed this theory, and that their reasons for choosing this theory were the proper ones. This has been held frequently where the verdict returned was in favor of plaintiff. *Miller* v. *Haley,* 38 Ariz. 469, 300 Pac. 1020; *Hilltop Metals M. Co.* v. *Hall,* 29 Ariz. 300, 241 Pac. 35. And it appears to follow logically that, if there is only one theory of the facts upon which a verdict can be returned in favor of a defendant, we must assume the jury adopted that theory also. We think, therefore, that the jury, by failing to return a verdict against the Rosenzweigs individually, necessarily found that there was no actual malice on their part in the publication of the libel. Since there is no contention that there is any evidence that any employee or agent of the company, except the Rosenzweigs and Reiter, did anything which would justify a finding of malice, it would appear that there is no evidence in the case to sustain this absolutely necessary element, and that the verdict was, therefore, not sustained by the evidence.

There is but one ground, we think, upon which even a plausible argument to the contrary can be made, and that is, that since, as a general proposition of law, where defendants are accused of a joint tort, a jury may return a verdict against one and in favor of the other, the jury in this case could have properly returned the verdict which it did. At first sight it would appear that there is some merit in the suggestion, but a careful analysis of the reason for the rule stated will show the fallacy of the proposition. It is well set forth in *Swain* v. *Tennessee Copper Co.*, 111 Tenn. 430, 78 S. W. 93, 94, as follows:

"The parties in all these cases are joint tort feasors. The reason for holding them liable for all the damages inflicted by any of them is that they are all present, in person or by representation, and join in the wrongful act, or in some way knowingly aid in doing it, thereby consenting to and approving the entire wrong and injury done. The whole injury is committed by each and all of the trespassers, and it is but just and right that each of them should be held responsible for all the damages inflicted; and, the liability being several and joint, they may be sued separately or jointly."

On an examination of the cases where a jury found against one tort-feasor and in favor of another, it will generally be found either that the one discharged by the jury had no connection with the tort or else that if he did have some connection therewith, nevertheless the defendant against whom the judgment was rendered played some active personal part in the wrongful act.

So far as we know, there is no case flatly in point on the facts where a corporation was sued for libel jointly with the agents who actually committed the libel, and the agents were released but the corporation held responsible for the libel. An analogous situation, however, has arisen many times in actions for

negligence where an employer was joined, under the doctrine of *respondeat superior*, with an employee, in a suit on an act of negligence committed by the latter. While it is true there are a few jurisdictions where the employee may be released by the jury, and the employer, who took no active part whatever in the tort, is held in damages, yet the overwhelming majority of cases are to the effect that, in a verdict against an employer who has in no way participated in the act of negligence on which the action is founded and in favor of the employee who actually committed the tort, the judgment against the employer must be reversed. The rule and the reasons therefor are set forth in *Doremus* v. *Root,* 23 Wash. 710, 63 Pac. 572, 573, 54 L. R. A. 649, as follows:

"The general rule undoubtedly is that, where one has received an actionable injury at the hands of two or more persons acting in concert, or acting independently of each other if their acts unite in causing a single injury, all of the wrongdoers, however numerous, are severally liable to him for the full amount of damages occasioned by such injury, and he may enforce the liability in an action against them all jointly, or any one of them severally, or against any number of them less than the whole. While the wrong committed is the joint wrong of the several parties participating therein, it is also, in contemplation of law, the several wrong of each of the participants. Cooley, Torts (2d Ed.) p. 153. On this principle, at common law, a jury in actions *ex delicto* against several persons, contrary to the rule in actions *ex contractu,* were permitted to find against one or more of the defendants and in favor of the others. The rule with regard to actions *ex delicto* remains the same under the Code; and the practice now permits the jury in an action for tort against several defendants to return a verdict against so many of them as the proofs show are guilty of the wrong charged, and in favor of the others. As it is the peculiar province of the jury to determine the guilt or innocence of the

several defendants, a verdict finding in favor of some and against others, even though there may be no very apparent reason for the distinction made, is not for that reason alone so far arbitrary or inconsistent as to require a reversal of the judgment entered thereon against those who have been found guilty. *Gulf, C. & S. F. R. Co.* v. *James,* 73 Tex. 12, 10 S. W. 744 [15 Am. St. Rep. 743]. It seems to be equally well settled, also, that silence of the verdict as to one of the defendants will not vitiate it as against the others. Such a verdict is treated as a finding in favor of the defendant not named on all of the issues, on which he is entitled to a judgment that plaintiff take nothing by his action. [Citing cases.] These general rules are relied on by the respondent to sustain the judgments entered in the court below. It must be borne in mind, however, that there are wide distinctions between the ordinary action for injuries, where all of the defendants participated in the wrongful act which caused the injury, and actions like the one before us, where one is liable because he committed the act and the other by operation of law, both with respect to the relations of the defendants to each other and to the injured person. . . . So, also, in such an action, whether brought against the employer severally or jointly with the employee, the gravamen of the charge is, and must be, the negligence of the employee; and no recovery can be had unless it be proven, and found by the jury, that the employee was negligent. Stated in another way: if the employee who causes the injury is free from liability therefor, his employer must also be free from liability. This was held in *New Orleans & N. E. R. Co.* v. *Jopes,* 142 U. S. 18, 12 Sup. Ct. 109, 35 L. Ed. 919. . . . In the course of the opinion it was said: 'It would seem, on general principles, that, if the party who actually causes the injury is free from all civil and criminal liability therefor, his employer must also be entitled to a like immunity. . . . If the immediate actor is free from responsibility because his act was lawful, can his employer—one taking no direct part in the transaction—be held responsible?' . . . So, too, from the principle that there can be no liability on the part

of an employer for the act of his employee in which he took no part, if the employer is free from liability, it follows that a judgment in favor of the employee in an action brought against him for an injury caused by such an act is a bar to a recovery against the employer in an action brought against him for the same cause of action.''

We think that all justice and reason upholds this view of the law. When the only reason why a judgment may be returned in favor of a plaintiff is that A has committed a tort, and the liability of B, if any, is an imputed one only, it would be a denial of all justice to say that the one who actually did the wrong may go free, while the one who can only be liable because of the former's wrongdoing is mulcted in damages. We hold, therefore, that, since there was no legal evidence before the jury that Reiter did or said anything from which malice could be imputed to the company, and since a verdict in favor of the Rosenzweigs, who actually published the libel, can only be legally sustained on the theory that the jury found them innocent of any actual malice, the verdict against the company cannot be sustained.

The judgment is reversed and the case remanded, with instructions to enter judgment in favor of the defendant company.

ROSS, J., Concurring.— I concur in the opinion of Justice LOCKWOOD, but feel that it goes too far and unnecessarily announces a rule that is unsound and if unchallenged might become fixed law in this state and defeat many righteous causes.

I do not think that, where the master is sued with his servant on the theory of *respondeat superior* for damages for the negligence of the servant, a verdict finding the issues against the master only is or should be treated as a finding that the servant was not negligent.

It must be admitted that if there was a tort committed by the defendants against the plaintiff it was the act of the agents of the corporation defendant. A corporation acts through its agents and in tort cases, such as negligence, libel, slander, etc., the rule of *respondeat superior* is applicable. Of course if the agent had committed no wrong the corporation has not. In other words, where, as here, the corporation and its agents are joined as defendants, if the agents are not guilty of libel, the corporation is not, and both should be acquitted of wrongdoing. Where a case is tried before a jury, it is the jury that should determine whether the defendants have committed the tort. The jury does that by its verdict after hearing all the evidence and the court's instructions. The verdict here was

" . . . do find for the plaintiff and against the defendant Rosenzweig & Sons, Jewelers, Inc., a corporation, and assess his actual damages in the sum of $750.00 and punitive damages in the sum of $750.00."

Thus the triers of the facts found the corporation, through its agents, who were also sued with it, published the alleged libelous matter concerning plaintiff, but failed to return a verdict either for or against the agents. To have been entirely consistent the verdict should have run against the individual defendants also, for, if the corporation was guilty, they, having uttered the libel, were also guilty. Juries' verdicts, however, are not always consistent, and the court that would undertake to administer justice on a requirement that verdicts be so would be woefully disappointed. The verdict against the corporation was, at most, defective. The court should have instructed the jury to return to the jury room and find on the issue of the individual defendants' liability. If it had, I have no doubt the verdict would have been

also against such defendants. If the individual defendants had felt the jury would find them not guilty, they no doubt would have requested the court to require a verdict on the issues as to them.

The proper course to take, when the verdict is returned in the form it was here, is stated in *Barnes* v. *Ashworth,* 154 Va. 218, 153 S. E. 711; *Standard Oil of New Jersey* v. *Davis,* 157 Va. 709, 162 S. E. 29. It is only common sense and reason to conclude that the jury thought it was not necessary to return a verdict against the individual defendants. The Washington case, *Doremus* v. *Root,* cited by Justice LOCK-WOOD in his opinion does indeed hold that a verdict against the master but silent as to the servant who is made a joint defendant is a finding that the latter was not guilty of negligence, and there are other cases that have blindly followed it. But many courts have taken the view that such a verdict is not a finding that the servant was free from negligence. In *Verlinda* v. *Stone & Webster Engineering Corp.,* 44 Mont. 223, 119 Pac. 573, 578, after a review of the cases, including the Doremus case, the court says:

"The conclusions reached by jurors are sometimes inexplicable. Often they arbitrarily find against one party and in favor of another without any apparent reason; but, if the evidence justifies the verdict as to the party held, there is no reason why it should not be deemed good as to him, notwithstanding there is no finding as to the other.

"It seems to us that the better rule is that, if the evidence is such that the jury might have found against both the master and the servant, the plaintiff should not be denied his recovery against the master because the jury were unable to agree upon a verdict against the servant, or arbitrarily disregarded the evidence tending to show negligence on the part of the servant. . . .

"The plaintiff might have dismissed the action as to Wallace [an employee] and proceeded against the company alone, or he might have proceeded against the company alone in the first instance. He might have insisted upon a verdict as to both defendants. Having elected not to do so, but to take judgment against the company alone his course amounted to a dismissal as to Wallace. *Rankin* v. *C. P. R. Co.*, 73 Cal. 93, 15 Pac. 57; *Fowden* v. *Pacific C. S. S. C. Co.*, 149 Cal. [151], 157, 86 Pac. 178. The failure of the jury to find as to Wallace should be regarded as no finding upon the issues as to him at all."

The most recent cases agree with this holding. *Anderson* v. *Salt Lake City*, 79 Utah 324, 10 Pac. (2d) 927; *Dunbaden* v. *Castles Ice Cream Co.*, 103 N. J. L. 427, 135 Atl. 886, 887. In the last case the court said:

"Some courts have held that the failure of a jury to return a verdict against the servant affords no ground to set aside a judgment rendered against the master because the verdict which ignores the servant should not be deemed or construed as a finding of absence of negligence on the part of the servant, but should be regarded as no finding as to the servant. Upon the rendition of such a verdict the case stands as to the servant as if it had never been tried and the master has whatever right he ever had against his servant. It will be observed that the verdict rendered in the present case is silent as to Grundman [the servant]. We think that such a verdict should be regarded as no finding against him. This view has support in decisions in this state."

See, also, *Stith* v. *J. J. Newberry Co.*, 336 Mo. 467, 79 S. W. (2d) 447, 459, wherein it is said:

"It has been held that a failure of the jury, through inadvertence or mistake of fact or law or otherwise, to return any verdict as to the servant, but only one against the master, does not present the question of an inconsistent, contradictory, and self-destructive verdict. *Whitesell* v. *Joplin & P. Ry. Co.*, 115 Kan. 53, 222 Pac. 133; *Benson* v. *Southern Pac. Co.*, 177 Cal.

777, 171 Pac. 948; *Melzner* v. *Raven Copper Co.*, 47 Mont. 351, 132 Pac. 552.''

However, upon the above verdict the court "Ordered, Adjudged and Decreed, that plaintiff . . . take nothing of or from the defendants, I. Rosenzweig, Newton Rosenzweig and Harry Rosenzweig, or any of them.'' This judgment was given on the theory that the verdict was a finding that these individual defendants were not guilty of libeling plaintiff. I think the court was not justified in entering the judgment in favor of the individual defendants and that it was serious error for it to have done so. There has been no appeal from such judgment and it has now become final. As long as this judgment stands, the individual defendants are acquitted of libel and, if they are not guilty, the corporation defendant could not be guilty. It is on this ground only that I concur in the opinion of Justice LOCKWOOD reversing the judgment against the corporation.

McALISTER, C. J., Dissenting.—I am unable to concur in that portion of the order directing that judgment be entered in favor of the corporation. In my opinion the case should be remanded for a new trial, and I will give briefly my reasons why.

I am in complete accord with the holding of Justice ROSS that the verdict, which was against the corporation but silent as to its agents and officers, the individual defendants, was not a verdict either for or against the latter. When it was returned in this form, the jury should have been directed by the court to decide the issue between the plaintiff and these defendants but this was not done; the verdict was accepted and the jury discharged instead. The case thereupon stood, so far as the agents were concerned, as though it had never been tried, and whatever rights

the corporation had against them were unaffected thereby. There being no verdict, the court was powerless to proceed upon the theory that the jury had found either for or against the individual defendants. If it had any right at all, under the circumstances, to regard the verdict's silence as a finding either for or against those defendants not mentioned therein, it should have found that it was equivalent to a verdict against them, because there is no escape from the conclusion that it could not hold the corporation guilty of the libelous acts sued on, unless it first found that the agents had committed them, since the only way by which a corporation can act is through its agents, and the court so instructed. So, when the jury said by its verdict that the corporation was responsible, it believed in its own mind, and acted on that belief, that the agents had maliciously published the letter upon which the action was based.

Inasmuch, however, as there was not, so far as the individual defendants were concerned, any verdict at all but merely a mistrial, the action of the court in treating the silence in the verdict as to them as a finding in their favor and rendering judgment thereon for them was, to my mind, not only erroneous but wholly without jurisdiction. The court's power to render judgment either for or against the agents never came into being, because this was impossible until a verdict as to them had been returned, and this never occurred. To hold that the court, in the absence of a verdict, had the right or power to say arbitrarily that there was a finding for the agents and render judgment thereon is nothing more nor less than depriving the individual defendants of their constitutional right to a jury trial in an ordinary case seeking damages for a tort, one of a class of actions that is almost universally tried before a jury. The action was not one in equity wherein the verdict of the jury

is merely advisory nor had a jury been waived. The court's power, therefore, to render judgment on the verdict in favor of the individual defendants was no greater than it would have been to render the same kind of a verdict at the close of a trial in which the jury had disagreed and been discharged.

Hence, as I see it, the judgment in favor of the individual defendants, having been based on a verdict that never existed, either in law or in fact, was void and of no effect, and, since the judgment against the corporation is based wholly on the principle of *respondeat superior* and cannot, under the great weight of authority, stand unless there is also a verdict against the defendant agents who committed the libel upon which the action is founded, the judgment for the plaintiff against the corporation should be reversed and the case remanded not with instructions to enter judgment in favor of the defendant corporation but for a new trial.